# CHICAGO, MILWAUKEE AND ST. PAUL RAILWAY COMPANY *v.* SOLAN.

## ERROR TO THE SUPREME COURT OF THE STATE OF IOWA.

No. 73. Argued November 1, 1897. — Decided January 17, 1898.

A statute of a State, providing that no contract shall exempt any railroad corporation from the liability of a common carrier, or carrier of passengers, which would have existed if no contract had been made, does not, as applied to a claim for an injury happening within the State under a contract for interstate transportation, contravene the provision of the Constitution of the United States empowering Congress to regulate interstate commerce.

THE case is stated in the opinion.

*Mr. George E. Clarke* for plaintiff in error. *Mr. Burton Hanson* and *Mr. George R. Peck* were on his brief.

*Mr. S. M. Stockslager* for defendant in error. *Mr. George C. Heard* was on his brief.

MR. JUSTICE GRAY delivered the opinion of the court.

This was an action brought in an inferior court of the State of Iowa against a railroad corporation incorporated under the laws of the State of Wisconsin, and authorized to transact business in the State of Iowa, and having a railroad extending from Rock Valley in Iowa to Chicago in Illinois, to recover $10,000 as damages for injuries suffered by the plaintiff between Boyden and Sheldon in Iowa, from the derailing, by the defendant's negligence, of a caboose attached to a freight train of the defendant, in which the plaintiff was travelling under a written contract by which the defendant agreed to carry him with cattle from Rock Valley to Chicago.

The defendant, in its answer, denied its negligence, and alleged contributory negligence on the part of the plaintiff; and further alleged that by a clause in the contract under which the plaintiff and the cattle were carried it was "among

other things expressly stipulated 'that the company shall in no event be liable to the owner or person in charge of said stock for any injury to his person in any amount exceeding the sum of $500;' that in consideration of said clause in said contract the defendant entered into a contract for the transportation of said stock from Rock Valley, Iowa, to Chicago, Illinois, for a less sum than its regular, usual charges, which fact the owner and shipper of said stock and the plaintiff all well knew at the time of the making of the said contract, and at the time the plaintiff started in transit with said stock from Rock Valley, Iowa, to Chicago, Illinois; that said contract, related exclusively to interstate transportation and constituted an interstate commerce transaction, and that the plaintiff and the owner and shipper of said stock, having accepted the benefits of said contract, are now estopped from questioning its validity or disavowing the same; that at common law said contract is a valid and legal contract, and that section 1308 of the Code of Iowa is void and unconstitutional, so far as said contract is concerned, as being an attempt to regulate and limit contracts relating to interstate commerce; that under and by virtue of the terms of said contract plaintiff is not entitled in any event to judgment herein to exceed the sum of $500."

The section of the Code of Iowa, referred to in the answer, is as follows: "No contract, receipt, rule or regulation shall exempt any corporation engaged in transporting persons or property by railway from liability of a common carrier, or carrier of passengers, which would exist had no contract, receipt, rule or regulation been made or entered into." Iowa Code of 1873, § 1308.

At the trial, it appeared that the plaintiff and the cattle under his charge were carried under such a contract as alleged in the answer, and that he suffered injuries as alleged in the declaration; and the court, against the defendant's objections and exceptions, excluded evidence offered by the defendant that the rate on cattle carried the same distance under contracts other than this one was fifty per cent higher than was charged by this contract; and instructed the jury that, if the

defendant was negligent and the plaintiff was without fault, the jury should allow him such a sum as would compensate him for his injuries ; and that the clause in the contract, limiting the plaintiff's damages to $500, was not permitted by law, and was void.

The jury returned a verdict for the plaintiff in the sum of $1000, upon which judgment was rendered. The defendant appealed to the Supreme Court of Iowa, which affirmed the judgment. 95 Iowa, 260. The defendant sued out this writ of error.

By the law of this country, as declared by this court, in the absence of any statute controlling the subject, any contract by which a common carrier of goods or passengers undertakes to exempt himself from all responsibility for loss or damage arising from the negligence of himself or his servants is void as against public policy, as attempting to put off the essential duties resting upon every public carrier by virtue of his employment, and as tending to defeat the fundamental principle on which the law of common carriers was established — the securing of the utmost care and diligence in the performance of their important duties to the public. *Railroad Co.* v. *Lockwood,* 17 Wall. 357; *Liverpool Steam Co.* v. *Phenix Ins. Co.,* 129 U. S. 397; *Compania La Flecha* v. *Brauer,* 168 U. S. 104, 117. In the leading case of *Railroad Co.* v. *Lockwood,* above cited, it was accordingly adjudged that an agreement in writing with a railroad company, by which a drover travelling with his cattle upon one of its trains, in consideration of his cattle being carried at less rates, stipulated to take all risk of injury to them and of personal injury to himself, did not exempt the company from all responsibility for injuries to him caused by the negligence of its servants. In *Hart* v. *Pennsylvania Railroad,* 112 U. S. 331, the general rule was affirmed; but a contract fairly made between a railroad company and the owner of goods, by which the latter was to pay a rate of freight based on the condition that the company assumed liability only to the extent of an agreed valuation of the goods, even in case of loss or damage by its negligence, was upheld as a just and reasonable mode of securing a due pro-

portion between the amount for which the company might be responsible and the compensation which it received, and of protecting itself against extravagant or fanciful valuations.

The statute of the State of Iowa, the validity of which is drawn in question in this case, affirms and extends, as applied to railroad corporations, the principle of the common law, by enacting that "no contract, receipt, rule or regulation shall exempt any corporation engaged in transporting persons or property by railway from liability of a common carrier, or carrier of passengers, which would exist had no contract, receipt, rule or regulation been made, or entered into." Iowa Code of 1873, § 1308; Iowa Stat. 1866, c. 113.

Under this statute, the courts of the State, in the case at bar, held that the stipulation, in the contract under which the plaintiff and the cattle in his charge were carried by the defendant, that the defendant should "in no event be liable to the owner or person in charge of said stock in any amount exceeding the sum of $500," was void, and could not be enforced by the courts. The plaintiff having been accordingly permitted to recover a verdict and judgment for a larger sum, the question presented by this writ of error is whether the statute, as applied to a claim, for an injury happening within the State, under a contract for interstate transportation, contravenes the provision of the Constitution of the United States empowering Congress to regulate interstate commerce.

This question is substantially answered by previous judgments of this court.

The question of the right of a railroad corporation to contract for exemption from liability for its own negligence is, indeed, like other questions affecting its liability as a common carrier of goods or passengers, one of those questions not of merely local law, but of commercial law or general jurisprudence, upon which this court, in the absence of express statute regulating the subject, will exercise its own judgment, uncontrolled by the decisions of the courts of the State in which the cause of action arises. But the law to be applied is none the less the law of the State; and may be changed by its legislature, except so far as restrained by the constitution of

the State or by the Constitution or laws of the United States. *Railroad Co.* v. *Lockwood*, 17 Wall. 357, 368; *Hough* v. *Railway Co.*, 100 U. S. 213, 226; *Burgess* v. *Seligman*, 107 U. S. 20, 33; *Myrick* v. *Michigan Central Railroad*, 107 U. S. 102, 109; *Smith* v. *Alabama*, 124 U. S. 465, 476–478; *Lake Shore &c. Railway* v. *Prentice*, 147 U. S. 101, 106; *Baltimore & Ohio Railroad* v. *Baugh*, 149 U. S. 368; *Paine* v. *Central Vermont Railroad*, 118 U. S. 152, 161.

Railroad corporations, like all other corporations and persons, doing business within the territorial jurisdiction of a State, are subject to its law. It is in the law of the State, that provisions are to be found concerning the rights and duties of common carriers of persons or of goods, and the measures by which injuries resulting from their failure to perform their obligations may be prevented or redressed. Persons travelling on interstate trains are as much entitled, while within a State, to the protection of that State, as those who travel on domestic trains. A carrier exercising his calling within a particular State, although engaged in the business of interstate commerce, is answerable, according to the law of the State, for acts of nonfeasance or of misfeasance committed within its limits. If he fails to deliver goods to the proper consignee at the right time and place, or if by negligence in transportation he inflicts injury upon the person of a passenger brought from another State, the right of action for the consequent damage is given by the local law. It is equally within the power of the State to prescribe the safeguards and precautions foreseen to be necessary and proper to prevent by anticipation those wrongs and injuries, which, after they have been inflicted, the State has the power to redress and to punish. The rules prescribed for the construction of railroads, and for their management and operation, designed to protect persons and property, otherwise endangered by their use, are strictly within the scope of the local law. They are not, in themselves, regulations of interstate commerce, although they control, in some degree, the conduct and the liability of those engaged in such commerce. So long as Congress has not legislated upon the particular sub-

ject, they are rather to be regarded as legislation in aid of such commerce, and as a rightful exercise of the police power of the State to regulate the relative rights and duties of all persons and corporations within its limits.

Such are the grounds upon which it has been held to be within the power of the State to require the engineers and other persons, engaged in the driving or management of all railroad trains passing through the State, to submit to an examination by a local board as to their fitness for their positions; or to prescribe the mode of heating passenger cars in such trains. *Smith* v. *Alabama*, 124 U. S. 465; *Nashville &c. Railway* v. *Alabama*, 128 U. S. 96; *New York, New Haven & Hartford Railroad* v. *New York*, 165 U. S. 628. See also *Western Union Tel. Co.* v. *James*, 162 U. S. 650; *Hennington* v. *Georgia*, 163 U. S. 299; *Gladson* v. *Minnesota*, 166 U. S. 427.

The statute now in question, so far as it concerns liability for injuries happening within the State of Iowa — which is the only matter presented for decision in this case — clearly comes within the same principles. It is in no just sense a regulation of commerce. It does not undertake to impose any tax upon the company, or to restrict the persons or things to be carried, or to regulate the rate of tolls, fares or freight. Its whole object and effect are to make it more sure that railroad companies shall perform the duty, resting upon them by virtue of their employment as common carriers, to use the utmost care and diligence in the transportation of passengers and goods.

*Judgment affirmed.*