# RICHMOND AND ALLEGHANY RAILROAD COMPANY *v.* R. A. PATTERSON TOBACCO COMPANY.

## ERROR TO THE SUPREME COURT OF APPEALS OF THE STATE OF VIRGINIA.

No. 172. Submitted January 4, 1898. — Decided February 21, 1898.

Section 1295 of the Virginia Code of 1887, enacting that "when a common carrier accepts for transportation anything, directed to a point of destination beyond the terminus of his own line or route, he shall be deemed thereby to assume an obligation for its safe carriage to such point of destination, unless, at the time of such acceptance, such carrier be released or exempted from such liability by contract in writing signed by the owner or his agent; and, although there be such contract in writing, if such thing be lost or injured, such common carrier shall himself be liable therefor, unless, within a reasonable time after demand made, he shall give satisfactory proof to the consignor that the loss or injury did not occur while the thing was in his charge" does not attempt to substantially regulate or control contracts as to interstate shipments, but simply establishes a rule of evidence, ordaining the character of proof by which a carrier may show that, although it received goods for transportation beyond its own line, nevertheless, by agreement, its liability was limited to its own line; and it does not conflict with the provisions of the Constitution of the United States, touching interstate commerce.

THE case is stated in the opinion.

*Mr. H. T. Wickham* and *Mr. Henry Taylor, Jr.,* for plaintiff in error.

*Mr. A. W. Patterson* for defendant in error.

MR. JUSTICE WHITE delivered the opinion of the court.

In August, 1888, the Patterson Tobacco Company delivered to the Richmond and Alleghany Railroad, which was then in the hands of receivers, a lot of tobacco consigned to Mann and Levy, Bayou Sara, Louisiana. On receiving the tobacco the railroad issued a bill of lading whereby it was expressly stipulated that it should only be liable for the transportation of the goods over its own line, and beyond this was to be responsible solely as a forwarder, that is to say, that all its obligations should be discharged if it safely carried the goods over its own road, and delivered them to a connecting carrier. The limitations on this subject in the bill of lading were full and clear, and there is no question that if the rights of the parties are to be measured by the terms of the bill of lading, the carrier was not liable for a loss happening beyond its line. When this shipment was made there was no law of the State of Virginia forbidding or purporting to forbid a carrier, in receiving goods for interstate shipment, from restricting its liability in accordance with the tenor of the bill of lading in question. In fact, the Supreme Court of Appeals of Virginia in this case expressly held that the Virginia law sanctions a contract made by a carrier to that effect. The bill of lading for the tobacco, issued as above stated, was not signed by the shipper, although at the time the freight was received and when the bill was issued the Code of Virginia contained the following provision :

" When a common carrier accepts for transportation anything directed to a point of destination beyond the terminus of his own line or route, he shall be deemed thereby to assume an obligation for its safe carriage to such point of destination, unless, at the time of such acceptance, such carrier be released or exempted from such liability by contract in writing signed by the owner or his agent; and, although there be such contract in writing, if such thing be lost or injured, such common carrier shall himself be liable therefor, unless, within a reasonable time after demand made, he shall give satisfactory proof

to the consignor that the loss or injury did not occur while the thing was in his charge." Sec. 1295, Virginia Code of 1887.

The tobacco not having been delivered to the consignees, the shippers sued the Richmond and Alleghany Railroad for the value thereof, on the assumption that the railroad was responsible as a common carrier for the non-delivery. The corporation relied for its defence on the contract embodied in the bill of lading, and on the fact that the tobacco had been duly transferred to a connecting carrier, and was thereafter lost. The case was submitted to the trial court on an agreed statement, admitting the receipt of the goods, the issue of the bill of lading, the fact that it was not signed by the shipper, and the loss of the tobacco beyond the lines of the defendant. The plaintiff rested on the statute above quoted, and the defendant company on its claim that the statute was a regulation of interstate commerce, and therefore in conflict with the Constitution of the United States. The trial court held the railroad liable, and from a judgment of the Supreme Court of Appeals of the State of Virginia, affirming its action, this writ of error is prosecuted.

The Supreme Court of Appeals of Virginia in its able opinion, and the counsel of both parties at bar conceded, that an attempt on the part of a State to prohibit a carrier, as to an interstate shipment, from limiting its liability to its own lines would be a regulation of interstate commerce, and therefore void. We shall, therefore, not examine this question, but shall proceed to a consideration of the case without expressing any opinion upon it. It is manifest that the statute of the State of Virginia in question does not attempt to substantially regulate or control contracts as to interstate shipments, but simply establishes a rule of evidence ordaining the character of proof by which a carrier may show that, although it received goods for transportation beyond its own line, nevertheless, by agreement, its liability was limited to its own line. That this is the sole purpose of the statute seems too plain for anything but statement. It leaves the carrier free to make such limitation as to liability on an interstate shipment beyond its own line as it may deem proper, provided only the

evidence of the contract is in writing and signed by the shipper. The distinction between a law which forbids a contract to be made and one which simply requires the contract when made to be embodied in a particular form is as obvious as is the difference between the sum of the obligations of a contract and the mere instrument by which their existence may be manifested. The contract is the concrete result of the meeting of the minds of the contracting parties. The evidence thereof is but the instrument by which the fact that the will of the parties did meet is shown.

The failure to bear this plain distinction in mind is the fallacy which is involved in all the contentions which are pressed by the plaintiff in error. It is of course elementary that, where the object of a contract is the transportation of articles of commerce from one State to another, no power is left in the States to burden or forbid it; but this does not imply that, because such want of power obtains, there is also no authority on the part of the several States to create rules of evidence governing the form in which such contracts when entered into within their borders may be made, at least, until Congress, by general legislation, has undertaken to govern the subject. But it is said, although the learned court below announced as an abstract principle that under the law of Virginia a carrier was free, when receiving an interstate shipment, to limit his liability to his own line, the conclusion reached by the court was inconsistent with this ruling, and, in effect, substantially repudiated its correctness. The line of reasoning by which this proposition is supported is this: If there had been no statute, it is said, the court admitted that the terms of the bill of lading would have exempted the carrier from liability beyond its own line, but by applying the statute to the bill of lading it did not so exempt the carrier, therefore the statute was so enforced as to prevent the carrier from contracting, and hence its application negatived the power to contract for such exemption. But the inconsequence is in the argument of the plaintiff in error and not in the reasoning or the conclusion of the court. The inadequacy of the bill of lading to protect the carrier from liability beyond

its own line resulted, it is true, from the statute, but not because the statute forbade the carrier from contracting so as to limit his liability, but because the contract which he did make was not in the form required by law, and therefore was not evidence that there was such a contract. Indeed, the entire argument upon which it is asserted that error was committed by the court below, but manifests in varying forms of statement the fallacy already noticed, that is, it comes from obscuring the difference between substance and form, between a power to contract and the asserted right in availing of the authority, to disregard the requisites essential to show a valid contract, and this confusion of thought also marks the difference between the case now presented and the very many adjudged cases cited by the plaintiff in error in support of its proposition.

Of course, in a latitudinarian sense any restriction as to the evidence of a contract, relating to interstate commerce, may be said to be a limitation on the contract itself. But this remote effect, resulting from the lawful exercise by a State of its power to determine the form in which contracts may be proven, does not amount to a regulation of interstate commerce. The principle on this subject has been often stated by this court, and, indeed, has been quite recently so fully reviewed and applied that further elaboration becomes unnecessary. In the case of *Chicago &c. Railway Co.* v. *Solan*, 169 U. S. 133, 137, 138, it was said:

"They are not in themselves regulations of interstate commerce, although they control in some degree the conduct and liability of those engaged in such commerce. So long as Congress has not legislated upon the particular subject, they are rather to be regarded as legislation in aid of such commerce, and as a rightful exercise of the police power of the State to regulate the relative rights and duties of all persons and corporations within its limits.

"Such are the grounds upon which it has been held to be within the power of the State to require the engineers and other persons engaged in the driving or management of all railroad trains passing through the State to submit to an

examination by a local board as to their fitness for their positions, or to prescribe the mode of heating passenger cars in such trains. *Smith* v. *Alabama*, 124 U. S. 465; *Nashville &c. Railway* v. *Alabama*, 128 U. S. 96; *New York, New Haven & Hartford Railroad* v. *New York*, 165 U. S. 628. See also *Western Union Telegraph Co.* v. *James*, 162 U. S. 650; *Hennington* v. *Georgia*, 163 U. S. 299; *Gladson* v. *Minnesota*, 166 U. S. 427."

These views dispose of the substantial questions which the case presents, for the contention which arises on the concluding sentences of the statute, imposing upon a carrier a duty where the loss has not happened on the carrier's own line to inform the shipper of this fact, is but a regulation manifestly within the power of the State to adopt.

*Affirmed.*