CENTRAL OF GEORGIA RAILWAY COMPANY *v.*
MURPHEY.

ERROR TO THE SUPREME COURT OF THE STATE OF GEORGIA.

No. 111.  Argued December 16, 1904.—Decided January 9, 1905.

Where the highest court of the State holds that a statute fixing the liability
  of common carriers applies to shipments made to points without the
  State, this court must accept that construction of the statute
The police power of the State does not give it the right to violate any pro-
  vision of the Federal Constitution.
The imposition, by a state statute, upon the initial or any connecting carrier,
  of the duty of tracing the freight and informing the shipper, in writing,
  when, where, how and by which carrier the freight was lost, damaged or
  destroyed, and of giving the names of the parties and their official posi-
  tion, if any, by whom the truth of the facts set out in the information can
  be established, is, when applied to interstate commerce, a violation of the

commerce clause of the Federal Constitution; and §§ 2317, 2318 of the Code of Georgia of 1895, imposing such a duty on common carriers is void as to shipments made from points in Georgia to other States. *Richmond & Alleghany R. R. Co.* v. *Tobacco Company,* 169 U. S. 311 distinguished.

THE plaintiff in error brings this case here to review the judgment of the Supreme Court of Georgia, affirming a judgment of the trial court, in favor of the defendants in error, for the damages sustained by them on the shipment of certain grapes, as hereinafter more particularly stated. (First reported, 113 Georgia, 514, and again on appeal from judgment on second trial, 116 Georgia, 863.)

The trial court gave judgment for the shippers of the grapes, who were plaintiffs below, for the amount of the difference between the market price of the grapes as shipped in good order and the amount they actually received for the same in their damaged condition, being the sum of $434.55. The action was commenced in the Pike County Court, in the State of Georgia, and the petition averred that on July 31, 1897, the petitioners shipped a carload of grapes from Barnesville, Georgia, consigned to Rocco Brothers, Omaha, Nebraska, by way of the Central of Georgia Railway Company. The freight was to be conveyed by more than two common carriers, the initial carrier being the Central of Georgia Railway Company, and the freight was shipped under a contract of shipment in which it was provided that the responsibility of each carrier should cease upon delivery to the next "in good order." The grapes were greatly damaged on the route between Barnesville and Omaha, and the damage resulted from the negligence of the common carriers on the route. The petitioners applied to the plaintiff in error, the initial carrier on the route, and served it with an application in writing August 20, 1897, in which they requested that the railway company should trace the freight and inform the petitioners, in writing, when, how and by which carrier the freight was damaged, and also that the company should furnish the petitioners the names of the parties and their official position, if any, by whom the truth of the facts set forth in the

information could be established.   The railroad company failed to trace the freight and give the information in writing within the thirty days required by law, wherefore the petitioners averred that the railroad company became indebted to the petitioners to the amount of the damage to the grapes as stated.

The plaintiff in error demurred to the petition, the demurrer was overruled, and it then put in an answer denying many of the allegations of the petition.   Upon the trial it appeared that the grapes were shipped from Barnesville, Georgia, to Omaha, Nebraska, and they were "routed" by the shippers over the Central of Georgia, then the Western and Atlantic, then the Nashville, Chattanooga and St. Louis, then the Louisville and Nashville, and then the Wabash Railroads.   The initial carrier, the plaintiff in error, issued to the shippers, A. O. Murphey and Hunt, a bill of lading for the carload of grapes, which showed the routing as above stated, and the bill was signed by Murphey and Hunt, as the contract between the plaintiff in error and themselves.   It contained a promise "to carry (the grapes) to said destination, if on its road, or to deliver to another carrier on the route to said destination, subject in either instance to the conditions named below, which are agreed to in consideration of the rate named."   Omaha, Nebraska, is not on the road of the plaintiff in error.   Paragraph 5 of the bill of lading, under which the shipment of grapes was made, reads as follows:

"5. That the responsibility, either as common carrier or warehouseman, of each carrier over whose line the property shipped hereunder shall be transported, shall cease as soon as delivery is made to the next carrier or to the consignee; and the liability of the said lines contracted with is several and not joint; neither of the said carriers shall be responsible or liable for any act, omission or negligence of the other carriers over whose line said property is or is to be transported."

The grapes were carried under the contract contained in the bill of lading, and arrived at Omaha, in the State of Nebraska, in a damaged condition.

The law under which the action was brought is found in

sections 2317 and 2318 of the Code of Georgia of 1895. Those sections are set forth in full in the margin.[1]

On the twentieth day of August, 1897, the shippers availed themselves of these provisions of the statute, and duly demanded of the plaintiff in error that it should trace the grapes and inform the shippers, in writing, when, how and by which carrier the grapes were damaged, and the names of the parties and their official position, if any, by whom the truth of the facts set out in the information could be established. They also demanded that the information should be furnished within thirty days from the date of the application. The plaintiff in error, although it endeavored so to do, failed to furnish the information within the time mentioned in the statute. It offered to prove on the trial that the car in which the grapes were originally shipped at Barnesville, on the road of the plaintiff in error, reached Atlanta, Georgia, the end of the line of the plaintiff in error, in due time, and that the grapes were then in good order, and the car was promptly delivered to the next connecting line, that is, the Western and Atlantic Railroad, and by that road it was delivered to the Nashville, Chattanooga and St. Louis Railroad Company, at Nashville, Tennessee, with the grapes in like good order and condition. The evidence was rejected, the court holding that the plaintiff

---

[1] Sec. 2317. When any freight that has been shipped, to be conveyed by two or more common carriers to its destination, where, under the contract of shipment or by law, the responsibility of each or either shall cease upon the delivery to the next "in good order" has been lost, damaged or destroyed, it shall be the duty of the initial or any connecting carrier, upon application by the shipper, consignee or their assigns, within thirty days after application, to trace said freight and inform said applicant, in writing, when, where, how and by which carrier said freight was lost, damaged or destroyed, and the names of the parties and their official position, if any, by whom the truth of the facts set out in said information can be established.

Sec. 2318. If the carrier to which application is made shall fail to trace said freight and give said information, in writing, within the time prescribed, then said carrier shall be liable for the value of the freight lost, damaged or destroyed, in the same manner and to the same amount as if said loss, damage or destruction occurred on its line.

in error had failed to comply with the conditions of the statute, and that it was therefore liable for the amount of the damage sustained by the petitioners on whatsoever road the damage actually occurred.

*Mr. John I. Hall,* with whom *Mr. Henry C. Cunningham, Mr. Lloyd Cleveland* and *Mr. Robert L. Berner* were on the brief, for plaintiff in error:

Section 2317 of the Civil Code of Georgia imposes a burden upon the carrier and interferes with its full freedom to contract with shippers with respect to confining its liability to its own line and is void when applied to interstate commerce. Under the Constitution any person, natural or artificial, may engage in interstate commerce. *Vance* v. *Vandercook Co.,* 170 U. S. 438, 455. The freedom of interstate commerce cannot be affected by state legislation. *Welton* v. *Missouri,* 91 U. S. 282; *Hall* v. *De Cuir,* 95 U. S. 485; *Wabash* v. *Illinois,* 118 U. S. 558; *Railroad Co.* v. *Husen,* 95 U. S. 465, 472; *W. U. Tel. Co.* v. *Pendleton,* 122 U. S. 347; *Fargo* v. *Michigan,* 121 U. S. 230; *Richmond R. R. Co.* v. *Tobacco Co.,* 24 S. E. Rep. 261, distinguished, and see *S. C.,* 169 U. S. 311. Under § 2276, Civil Code of Georgia, 1895, a carrier may by express contract limit its liability to its own line. *Central R. R. Co.* v. *Avant,* 80 Georgia, 195; *Richmond & Danville* v. *Shomo,* 90 Georgia, 496. The requirements of the statute involved are unreasonable and as such interfere with interstate commerce and are void. *C., C. & St. L. R. R.* v. *Illinois,* 176 U. S. 514, and cases cited.

The statute fixes a liability on the carrier without due process of law. *Wallace* v. *Railway Co.,* 94 Georgia, 732. An act of legislature which arbitrarily makes one person liable for the debts or responsible for the acts of another would deprive him of due process of law. *Camp* v. *Rogers,* 44 Connecticut, 291; *Colon* v. *Lisk,* 47 N. E. Rep. (N. Y.) 302; *People* v. *O'Brien,* 18 N. E. Rep. (N. Y.) 692; *Towle* v. *H. Mann,* 53 Iowa, 42; *Ohio R. R. Co.* v. *Lackey,* 78 Illinois, 55; *Beilenberg* v. *Railway Co.,* 20 Pac. Rep. 314. Nor does the statute permit any defense.

*Mr. W. W. Lambdin,* with whom *Mr. Hoke Smith* was on the brief, for defendants in error.

Doubts are always resolved in favor of the constitutionality of the statute. The violation must be clear and palpable in order for the statute to be held unconstitutional. Cooley's Constitutional Limitations, 6th ed., 216; *Ogden* v. *Saunders,* 12 Wheat. 213, 270; *Munn* v. *Illinois,* 94 U. S. 113, 125; *Cooper* v. *Telfair,* 4 Dall. 14, 19; *Plumley* v. *Massachusetts,* 155 U. S. 461, 479; *Cary* v. *Giles,* 9 Georgia, 253, 258.

Under the facts in this case, the shipment of grapes was damaged by the negligence of one of the carriers, which handled the shipment. *Central &c. Ry. Co.* v. *Murphey,* 113 Georgia, 514, 520.

The initial carrier having failed to trace the freight and give to the shipper the required information, it became "liable for the value of the freight lost, damaged or destroyed in the same manner, and to the same extent as if said loss, damage or destruction occurred on its own line." The law under the facts in this case imputes the negligence to the defendant company, and makes the same, in effect, its negligence. Code of Georgia of 1895, § 2318; case below, 113 Georgia, 514, 520.

This statute was before the state court in *Southern Ry. Co.* v. *Ragsdale,* 119 Georgia, 773, and the ruling made in this case was adhered to. A strong intimation was given in this last case to the effect that if the railroad company should prove that it was impossible for it to trace the freight and give the required information within the time provided, such would be a defense to the action. In the case at bar, however, the court held affirmatively that the facts offered in evidence by the defendant were not sufficient to make out such a defense.

A railroad company is not compelled to make a contract to forward goods beyond its own line. *Coles* v. *Railroad Co.,* 86 Georgia, 251; *A., T. &c. R. R. Co.* v. *Railroad Co.,* 110 U. S. 668, 680. But when it receives goods consigned to a point beyond its own line, it undertakes to transport them to their destination, and if the goods are lost or damaged, it will be

liable therefor, in the absence of a contract otherwise limiting its liability. *Falvey* v. *Railroad Co.*, 76 Georgia, 597; Hutchinson on Carriers, 2d ed., §§ 145, 152. However, it may by express contract, limit its liability to its own line. *Central Ry. Co.* v. *Avant*, 80 Georgia, 195; *R. & D. R. R. Co.* v. *Shomo*, 90 Georgia, 500.

Such being the state of the law in Georgia, and the shipper not being able to hold the carrier with which he dealt liable, on account of the limitations which were put in the contracts of shipment in pursuance of the decisions cited *supra* and the shipper not being able to discover how or where his goods were damaged, and being thus entirely helpless in the premises— all the avenues of information being closed to him—the legislature of Georgia came to his relief and gave him a remedy by enacting the statute under consideration.

The contract under which the goods were shipped in this case was made in Georgia, and is governed by the laws of that State. *Liverpool &c. Co.* v. *Insurance Co.*, 129 U. S. 397.

The defendant railroad company "being affected with a public interest," and being a Georgia corporation, and being clothed with special privileges, is therefore subject to legislative control in the interest of the public. *Munn* v. *Illinois*, 94. U. S. 113; *Ga. R. R. Co.* v. *Smith*, 128 U. S. 174; *Chicago &c. Ry. Co.* v. *Pullman Car Co.*, 139 U. S. 79, 90; *Smyth* v. *Ames*, 169 U. S. 466, 544.

The statute does not violate the commerce clause of the Federal Constitution, nor does it attempt to regulate interstate commerce. States may, in the exercise of their reserved powers, enact laws which, though they incidentally relate to and affect commerce between the States, yet are not to be considered as regulations of that commerce within the meaning of the Constitution of the United States. *Sherlock* v. *Alling*, 93 U. S. 99, 103; *Peik* v. *Chicago &c., Ry. Co. et al.*, 94 U. S. 164; *Bagg* v. *Wilmington &c. Ry. Co.*, 109 N. Car. 279; *Kidd* v. *Pearson*, 128 U. S. 1, 16; *Fry* v. *State*, 63 Indiana, 552; *Williams* v. *Fears*, 179 U. S. 270; *S. C.*, affirming 110 Georgia, 584; *Smith* v. *Ala-*

*bama,* 124 U. S. 465; *Nashville &c. Ry. Co.* v. *Alabama,* 128 U. S. 96, 100; *Missouri &c. Ry. Co.* v. *Haber,* 169 U. S. 613, 626; *New York &c. R. R. Co.* v. *New York,* 165 U. S. 628; *Richmond &c. R. R. Co.* v. *Patterson Tobacco Co.,* 169 U. S. 311, affirming *S. C.,* 24 S. E. Rep. (Va.) 261; *St. Joseph &c. R. R. Co.* v. *Palmer* (Neb.), 22 L. R. A. 335; *Hart* v. *Railway Co.,* 69 Iowa, 485; *McCann* v. *Eddy,* 133 Missouri, 59; *Missouri &c. Ry. Co.* v. *McCann,* 174 U. S. 580.

The statute in question comports with sound public policy and with responsibility placed upon carriers by the common law and the statutes and decisions of the various States and of the United States. The shipper and the carrier are on an unequal footing, and the carrier is therefore held to rigid responsibility. Code of Georgia of 1895, § 2264; *Central Ry. Co.* v. *Hasselkus,* 91 Georgia, 382; *Penn. R. R. Co.* v. *Hughes,* 191 U. S. 477, 489; *Balt. & Ohio R. R. Co.* v. *Voigt,* 176 U. S. 498, 505; *New York &c. R. R. Co.* v. *Lockwood,* 17 Wall. 357; *Bank of Ky.* v. *Adams Ex. Co.,* 93 U. S. 174; *Railway Co.* v. *Stevens,* 95 U. S. 655; *Missouri &c. R. R. Co.* v. *McCann,* 174 U. S. 580; *Brockway* v. *Express Co.,* 168 Massachusetts, 257; *Ohio &c. Ry. Co.* v. *Tabor,* 98 Kentucky, 503; *Cent. R. R. Co.* v. *Lippman,* 110 Georgia, 665.

The United States Supreme Court will generally adopt the construction placed upon a statute of a State by the court of last resort of such State. *Sioux City Trust Co.* v. *Trust Co.,* 172 U. S. 642; *Postal Tel. Cable Co.* v. *Adams,* 155 U. S. 688; *Geer* v. *Connecticut,* 161 U. S. 519; *Railroad Tax Cases,* 92 U. S. 575.

The statute under consideration facilitates the safe transportation of goods, and is therefore constitutional. *Chicago &c. Ry. Co.* v. *Solan,* 169 U. S. 133.

The regulation of the enjoyment of the relative rights and performance of the duties of all persons within the jurisdiction of a State, belongs primarily to such State under its reserved power to provide for the safety of all persons and property within its limits. *Missouri &c. Ry. Co.* v. *Haber,* 169 U. S. 613,

635; *Lake Shore &c. Ry. Co.* v. *Ohio,* 173 U. S. 299, citing 7
Cush. 53, 85; Cooley's Const. Lim., 6th ed., 715.

Plaintiff in error's contention that the statute deprives it of
its property without due process of law, is not well taken.    The
railroad company was duly served with notice and process
and has had its day in court.    *Chicago &c. Ry. Co.* v. *Zernicke,*
183 U. S. 582, 587; *Missouri Ry. Co.* v. *Mackey,* 127 U. S. 205;
*Minneapolis &c. Ry. Co.* v. *Herrick,* 127 U. S. 210; *Mo. Pac.
Ry. Co.* v. *Humes,* 115 U. S. 512; *Walker* v. *Sauvinet,* 92 U. S.
90; *St. Louis &c. Ry. Co.* v. *Mathews,* 165 U. S. 1; *Jones* v.
*Brim,* 165 U. S. 180.

MR. JUSTICE PECKHAM, after making the foregoing state-
ment, delivered the opinion of the court.

The Supreme Court of Georgia has held in this case that the
statute applies to shipments of freight destined to points out-
side, as well as to those inside the State, and we must accept
that construction of the state statute.    The question for us to
decide is whether the statute, when applied to an interstate
shipment of freight, is an interference with or a regulation of
interstate commerce, and therefore void.

We think the imposition upon the initial or any connect-
ing carrier, or the duty of tracing the freight and informing
the shipper, in writing, when, where, how and by which carrier
the freight was lost, damaged or destroyed, and of giving the
names of the parties and their official position, if any, by whom
the truth of the facts set out in the information can be estab-
lished, is, when applied to interstate commerce, a violation of
the commerce clause of the Federal Constitution.    The Su-
preme Court of Georgia has held that a carrier has in that State
the right to make a contract with the shipper, to limit its lia-
bility as a carrier to damage or loss occurring on its own line.
*Central Railroad Co.* v. *Avant,* 80 Georgia, 195; *Richmond &
Danville Railroad Co.* v. *Shomo,* 90 Georgia, 496.

Whether the State would have the right to prohibit such a

contract with regard to interstate commerce need not therefore be considered. It has not done so, but on the contrary its highest court has recognized the validity of such a contract. Without the provisions of the statute in question, the plaintiff in error would not be liable to the shippers in this case, if, without negligence, they delivered the consignment in good condition to the succeeding carrier. This they offered to prove was the case. But if this statute be valid, this limitation of liability can only be availed of by the railroad company by complying with its provisions. In other words, before it can avail itself of the exemption from liability beyond its own line, provided for by its valid contract, the initial or any connecting carrier must comply with the terms of the statute, and must within thirty days after notification obtain and give to the shipper the information provided for therein. This is certainly a direct burden upon interstate commerce, for it affects most vitally the law in relation to that commerce, and prevents the exemption provided by a legal contract between the parties from taking effect, except upon terms which we hold to be a regulation of interstate commerce. It is said that the reason for the passage of such an act lies in the fact that, as a general rule, shippers under such a contract as the one in question are very much inconvenienced in obtaining evidence of the loss or damage, where it occurred on another road than that of the initial carrier. It is contended that under such contracts, there being great difficulty in identifying the particular carrier upon whose road the loss occurred, it is reasonable to make the initial or other connecting carrier liable therefor, unless such carrier furnish the information provided for in the statute.

We can readily see that a provision, such as is contained in the statute in question, would be a very convenient one to shippers of freight through different States. And a provision making the initial or any connecting carrier liable in any event for any loss or damage sustained by the shipper, on account of the negligence of any one of the connecting lines, would also

be convenient for the shippers; but it would hardly be maintained, when applied to the interstate shipment of freight, that a state statute to that effect would not violate the commerce clause of the Federal Constitution. The provision of this statute, while not quite so onerous, is yet a very plain burden upon interstate commerce. It is also said that it is so much easier for the initial or other connecting carrier to obtain the information provided for in the statute than it is for the shipper, that a statute requiring such information to be obtained under the penalty of such carrier being liable for the damage sustained, ought to be upheld for that very reason.

Assuming the fact that the carrier might more readily obtain the information than the shipper, we do not think it is material upon the question under consideration. We are not, however, at all clear in regard to the fact. The loss or damage might occur on the line of a connecting carrier, outside the State where the shipment was made, (as was the case here), and we do not perceive that the initial carrier has any means of obtaining the information desired, not open to the shipper. The railroad company, receiving the freight from the shipper, has no means of compelling the servants of any connecting carrier to answer any question in regard to the shipment or to acknowledge its receipt by such carrier, or to state its condition when received. And when it is known by the servants of the connecting company that the object of such questions is to place in the hands of the shipper information upon which its liability for the loss or damage to the freight is to be based, it would seem plain that the information would not be very readily given, and the initial or other carrier could not compel it. The effect of such a statute is direct and immediate upon interstate commerce. It directly affects the liability of the carrier of freight destined to points outside the State, with regard to the transportation of articles of commerce; it prevents a valid contract of exemption from taking effect, except upon a very onerous condition, and it is not of that class of state legislation which has been held to be rather an aid to

than a burden upon such commerce. The statute in question prevents the carrier from availing itself of a valid contract, unless such carrier comply with the provisions of the statute by obtaining information which it has no means of compelling another carrier to give, and yet if the information is not obtained the carrier is to be held liable for the negligence of another carrier over whose conduct it has no control. This is not a reasonable regulation in aid of interstate commerce, but a direct and immediate burden upon it.

The case of *Richmond & Allegheny Railroad Co.* v. *Tobacco Company*, 169 U. S. 311, is not an authority against these views, but, on the contrary, it supports and exemplifies them. Section 1295 of the Virginia Code of 1887, was held not to be a regulation of interstate commerce, because it simply established a rule of evidence ordaining the character of proof by which a carrier might show that, although it received goods for transportation beyond its own line, nevertheless, by agreement, its liability was limited to its own line. The statute left the carrier free to make any limitation as to its liability on an interstate shipment, beyond its own line, as it might deem proper, provided only the evidence of the contract was in writing and signed by the shipper. The provision of the Virginia statute that, although the contract in writing provided for therein was made in fact, yet "if such thing be lost or injured such common carrier shall himself be liable therefor, unless, within a reasonable time after demand made, he shall give satisfactory proof to the consignor that the loss or injury did not occur while the thing was in his charge," is a materially different provision from the one under consideration. A provision in a statute may be deemed a reasonable one, and not a regulation of interstate commerce, where the statute simply imposes a duty upon the carrier, when the loss has not happened on the carrier's own line, to inform the shipper of that fact within a reasonable time, and this court has said in the above case that such a provision is manifestly within the power of the State to adopt. This is very different from the duty im-

posed upon the carrier by the statute in question here, which is much more onerous, and imposes a liability, unless the detailed information provided for in the statute is obtained and given to the shipper.

The case of *Chicago, Milwaukee &c. Railway Company* v. *Solan*, 169 U. S. 133, holds the same general principle as that involved in the case just cited. To the same effect are the cases referred to in the opinion of Mr. Justice Gray in the *Solan* case. It is idle to attempt to comment upon the various cases decided by this court relating to this clause of the Federal Constitution. We are familiar with them, and we are certain that our decision in this case does not run counter to the principles decided in any of those cases. The statute here considered we think plainly imposes a burden upon the carrier of interstate commerce and is not an aid to it, but in its direct and immediate effect it is quite the contrary.

The power to regulate the relative rights and duties of all persons and corporations within the limits of the State cannot extend so far as to thereby regulate interstate commerce. The police-power of the State does not give it the right to violate any provision of the Federal Constitution. Being of the opinion that the statute in question when applied to an interstate shipment is a regulation of interstate commerce, we must hold the statute, so far as it affects such shipments, to be void on that account. The judgment of the Supreme Court of Georgia is reversed and the case remanded for such further proceedings as may be consistent with this opinion.

*Reversed.*