SKIPPER v. SEABOARD AIL LINE RAILWAY.

Liability of Initial Line for Loss of Interstate Shipment.—Code. 1902, 1710, requiring carrier to trace freight or express shipped over it and connecting carriers; 2176, making carrier liable for shipment over it and connecting lines unless it produces a receipt from connecting carrier, and act of 1903, 1, 2, making the bill of lading issued by initial carrier *prima facie* evidence of liability of loss or damage to goods in course of transportation, do not regulate interstate commerce, burden it, or materially interfere therewith.

Before O. W. Buchanan, special Judge, October Term, 1905, Lancaster. Affirmed.

Action by Eliza M. Skipper against Seaboard Air Line Ry. From judgment for plaintiff, defendant appeals.

*Messrs. Glenn & McFadden* and *T. Y. Williams,* for appellant. The former cite: 53 S. C., 496; 196 U. S., 194; 43 S. C., 473; 19 S. C., 353; 169 U. S., 311; 92 Va., 670; 196 U. S., 204; 33 S. C., 359.

*Messers. Ernest Moore* and *D. R. Williams,* contra, cite: 66 S. C., 477; 8 Cyc., 925; 16 Cyc., 934; 169 U. S., 311, 133: 25 Supt. Ct. R., 218.

October 8, 1906. The opinion of the Court was delivered by

Mr. Chief Justice Pope. The action here was brought against the defendant for $382.20, as damages for the loss

of certain contents from a trunk which was delivered to the defendant for transportation beginning at Chester, S. C., and ending at Anglewood, Ill.; said trunk containing the baggage belonging to three persons traveling on tickets issued by the defendant from said Chester, S. C., to Anglewood, Ill.

The answer of the defendant admitted that on the 28th of July, 1904, the tickets were bought and paid for by the plaintiff over the defendant's line of railway from Chester, S. C., to Atlanta, Ga., and thence over other connecting lines of railway, to Anglewood, Ill. The defendant also admitted receiving the plaintiff's trunk and the delivery to her of a check therefor, and that the contract was that the defendant would transport said trunk from Chester, S. C., to Atlanta, Ga., and deliver the same to its connecting lines over which the plaintiff was traveling. It further admits that said trunk was in apparent good order. As to what condition it was in when received by the plaintiff at Anglewood, Ill., the defendant had no knowledge or information sufficient to form a belief. The defendant further alleges that said trunk was in good order when delivered by it to the Western and Atlantic Railway Company.

The case came on for trial before special Judge O. W. Buchanan, at Lancaster, S. C. Both sides introduced testimony.

The plaintiff's witnesses testified as to the number and value of the articles abstracted from the trunk, and that the trunk when delivered at Anglewood, Ill., had the lock broken and as to the damages which resulted from the loss of such articles.

The defendant's witnesses testified to the condition of the contracts evidenced by the tickets issued to the plaintiff by the defendant, and also to correspondence between the attorneys for plaintiff and railway authorities.

After the charge of his Honor, the jury returned the verdict of $363.85 in favor of the plaintiff.

After. entry of judgment on said verdict, the defendant appealed on ten grounds, but the appellant confines its argument to certain constitutional questions of law.    The points raised by the defendant resolve themselves into an attack upon the constitutionality of sections 1710 and 2176, vol. 1, Code of Laws of 1902, and of Act No. 1 of the laws of 1903 of this State.    The contention of defendant is that each of said sections of the Code and said act of 1903 is unconstitutional, null and void, because when applied to interstate carriers or carriage of baggage such as this, each and all of them impose a burden on interstate commerce, and thus violate the commerce clause of the Federal Constitution.    The following are copies of the sections and act referred to:

Section 1710. "When under contract for shipment of freight or express over two or more common carriers, the responsibility of each or any of them shall cease upon delivery to the connecting line 'in good order,' and if such freight or express has been lost, damaged, or destroyed, it shall be the duty of the initial, delivering or terminal road, upon notice of such loss, damage or destruction being given to it by shippers, consignee, or their assigns, to adjust such loss or damage with the owners of said goods within forty days, and upon failure to discharge such duty within forty days, after such notice, or to trace such freight or express, and inform the said party so notifying, when, where and by which carrier the said freight or express was lost, damaged or destroyed, within said forty days, then said carrier shall be liable for all such loss, damage or destruction in the same manner and to the same extent as if such loss, damage or destruction occurred on its lines: *Provided,* That, if such initial, terminal or delivering road can prove that, by the exercise of due diligence, it has been unable to trace the line upon which such loss, damage or destruction occurred, it shall thereupon be excused from liability under this section."

Section 2176. "In case of the loss or damage to any article or articles delivered to any railroad corporation for transportation over its own and connecting roads, the initial cor-

poration, or corporations first receiving the same, shall, in every case, be liable for such loss or damage, but may discharge itself from such liability by the production of a receipt, in writing, for the said article or articles from the corporation to whom it was its duty to deliver such article or articles in the regular course of transportation. In which event, the said connecting road or roads shall be severally so liable, but may in succession and in like manner discharge themselves respectively therefrom; but if any such corporation shall wilfully fail or refuse, upon reasonable demand being made to it by any party interested in the production of such receipt, to produce the same, then it shall not be entitled to claim the benefit of such exemption in any action against the said railroad corporation to render it liable for such loss or damage."

Acts of 1903, 1, 2. "An Act to further define connecting lines of common carriers and to fix their liabilities.

"Section 1. *Be it enacted* by the General Assembly of the State of South Carolina, That all common carriers over whose transportation lines, or parts thereof, any freight or baggage or other property received by either of such carriers on a contract for through carriage recognized, acquiesced in or acted upon by such carriers, shall in this State, with the respect to the undertaking and matters of such transportation, be considered and construed to be connecting lines, and be deemed and held to be the agents of each other, each the agent of the others, and all the others the agents of each, and shall be held and deemed to be under a contract with each other and with the shipper, owner and consignees of such property for the safe and speedy through transportation thereof from one point of shipment to destination; and such contract as to the shipper, owner or consignee of such property shall be deemed and held to be the contract of each of such common carriers; and in any of the Courts of this State, any through bill of lading, waybill, receipt, check or other instrument issued by either of such carriers, or other proof showing that either of them has received such freight,

baggage or other property for such through shipment or transportation, shall continue *prima facie* evidence of the subsistence of the relations, duties and liabilities of such carriers as herein defined and prescribed, notwithstanding any stipulation or attempted stipulations to the contrary by such carriers, or either of them.

"Section 2. For any damages for injury, or damage to or loss, or delay of any freight, baggage, or other property sustained anywhere in such through transportation over connecting lines, or either of them, as contemplated and defined in the next preceding section of this act, either of such connecting carriers which the person or persons sustaining such damages may first elect to sue in this State therefor, shall be held liable to such person or persons, and such carrier so held liable to such person or persons shall be entitled in a proper action to recover the amount of any loss, damage or injury it may be required to pay such person or persons from the carrier through whose negligence the loss, damage or injury was sustained, together with costs of suit."

The subject is not only intensely interesting in its consideration, but it is of great practical importance, for, as was well said by Mr. Justice Woods, in *Willett* v. *R. R.,* 66 S. C., 477, 479; "With the immense traffic and the resulting complicated business methods of modern American railroads and the connection of these railroads with one another, to impose upon the owner of property passing over connecting lines, the burden of making affirmative proof that the loss occurred on a certain one of these lines, would be practically relieving of liability railroads handling freight as connecting lines; for the owner could rarely make the required proof, and when he could make it, in most instances, the expense of doing so would be greater than the value of the goods."

In considering the power of State to legislate upon the question of interstate commerce, the Supreme Court of the United States has held, "That an attempt on the part of a State to prohibit a carrier, as to an interstate shipment, from limiting its liability to its own lines, would be a regulation

of interstate commerce and, therefore void," in construing sections 2317-2318 of the Georgia Code in the case of the *Central Georgia R. R. Co.* v. *Murphy,* 196 U. S., 194. These two sections of the Georgia Code provide that if the carrier to which application is made, "shall fail to trace said freight and give said information in writing within the time prescribed therein, said carrier shall be liable for the value of the freight lost, damaged or destroyed in the same manner and to the same amount as if said loss, damage or destruction occurred on its line." Thus it is seen that the judgment against the initial line was rendered absolute and must be therefore considered as an infringement by the State of Georgia on the commerce clause of Federal Constitution. In the text of this decision, *R. R.* v. *Murphy, supra,* the U. S. Supreme Court has distinctly recognized and upheld its two former decisions in the *Chicago, Milwaukee & St. Paul Ry. Co.* v. *Patrick L. Solan,* 169 U. S., 133; and the *Richmond Ry. Co.* v. *R. A. Patterson Tobacco Company,* 169 U. S., 311.

If the two sections of our Code, and the Act of 1903, complained of, are violative of the Constitution of the United States, of course they are void. The appellant here sought to obtain from the Circuit Judge a decision of the unconstitutionality of these provisions of our law. The Circuit Judge refused to hold them unconstitutional, and he now appeals to us to reverse the Judge's decision.

The case of *Chicago, Milwaukee & St. Paul Ry. Co.* v. *Patrick L. Solan, supra,* was an action to upset a section of the Code of Iowa which provided: "No contract, receipt, rule or regulation shall exempt any corporation engaged in transporting persons or property by railway from liability of a common carrier, or carrier of persons, which would exist had no contract, receipt, rule or regulation been made or entered into." The jury found a verdict for $1,000, which was appealed from, but the judgment was affirmed in 95 Iowa, 260. Justice Grey, in delivering the opinion of the United States Supreme Court on an appeal from the

Iowa Court, said (page 135) : "By the law of this country as declared by this Court, in the absence of any statute controlling the subject, any contract by which a common carrier of goods or passengers undertakes to exempt himself from all responsibility of himself or his servants, is void as against public policy, as attempting to put off the essential duties that rest upon every public carrier by virtue of his employment, and as tending to defeat the fundamental principles on which the law of common carriers was established to the securing of the utmost care and diligence in the performance of their important duties to the public." Justice Grey further says in his opinion : "The question of the right of a railway corporation to contract for exemption from liability for its own negligence is, indeed, like other questions effecting its liability as a common carrier of goods or passengers, one of those questions not of merely local law, but of commercial law or of general jurisprudence upon which this Court, in the absence of express statute regulating the subject, will exercise its own judgment, uncontrolled by the decisions of the Courts of the State in which the cause of action arises. But the law to be applied is none the less the law of the State, and may be changed by its legislature, except so far as restrained by the Constitution of the State or by the Constitution or laws of the United States.   *   *   * Railway corporations, like all other corporations and persons doing business within the territorial jurisdiction of a State, are subject to its law. It is in the law of the State that provisions are to be found concerning the rights and duties of common carriers of persons or of goods, and the measure by which injuries resulting from their failure to perform their obligations may be prevented or redressed. Persons traveling on interstate transportation are as much entitled, while within a State, to the protection of that State, as those who travel on domestic transportation. A carrier exercising his calling within a particular State, although engaged in the business of interstate commerce, is answerable according to the law of the State for acts of nonfeasance or of mis-

feasance committed within its limits. If he fails to deliver goods to the proper consignee at the right time and place, or if by negligence in transportation should he inflict injury upon the person of a passenger brought from another State, the right of action for the consequent damage is given by the local law. It is equally within the power of the State to prescribe the safeguards and precautions foreseen to be necessary and proper to prevent by anticipation those wrongs and injuries which, after they had been inflicted, the State has the power to redress and to punish. The rules prescribed for the construction of railroads, and for their management and operation, designed to protect persons and property otherwise endangered by their use, are strictly within the scope of the local law. They are not in themselves regulations of interstate commerce, although they control in some degree the conduct and liability of those engaged in such commerce. So long as Congress has not legislated upon the particular subject, they are rather to be regarded as legislation in aid of such commerce, and as a rightful exercise of the police power of the State to regulate the relative rights and duties of all persons and corporations within its limits. * * * The statute now in question, so far as it concerns liability for injuries happening within the State of Iowa—which is the only matter presented for decision in this case—clearly comes within the same principles. It is in no just sense a regulation of commerce. It does not undertake to impose any tax upon the company, or to restrict the persons or things to be carried, or to regulate the rate of tolls, fares or freight. · Its whole object and effect are to make it more sure that railroad companies shall perform the duty resting upon them by virtue of their employment as common carriers to use the utmost care and diligence in the transportation of passengers and goods."

So in the case of *Richmond &c. Co.* v. *R. A. Patterson Tobacco Co., supra,* Mr. Justice White, as the organ of the Court, in speaking of a contract, says, on page 14: "Evidence thereof is but the instrument by which the fact that

the will of the parties did meet is shown. * * * It is, of course, elementary that where the object of a contract is the transportation of articles of commerce from one State to another, that no power is left in the States to burden or forbid it; but this does not imply that, because such want of power obtains, there is also no authority on the part of the several States to create rules of evidence governing the form in which such contract when entered into within their borders may be made, at least until Congress, by general legislation, has undertaken to govern the subject. * * * Of course, in a latitudinarian sense, any restriction as to the evidence of a contract relating to interstate commerce may be said to be a limitation of the contract itself. But this remote effect, resulting from the lawful exercise by a State of its power to determine the form in which contracts may be proved, does not amount to a regulation of interstate commerce."

Justice White therein refers to the case we have just quoted from so liberally—*Chicago, Milwaukee & St. Paul Ry. Co.* v. *Patrick L. Solan.*

It will thus be seen that it is perfectly legitimate for our legislature, in absence of any national legislation, to make such rules and regulations as it may seem proper, provided it does not destroy or seriously hamper the subjects of interstate commerce.

In the body of our statutes it will be observed that great care has been taken to leave the way open for the conduct of interstate commerce. We have only provided rules of evidence, and in doing this the decisions of the United States Supreme Court hold us perfectly justified. We, therefore, overrule all of these objections to the constitutionality of said statutes.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.

Mr. Justice Jones: *I concur.* There is a vital distinction between our statute and the Georgia statute, which was

condemned in *Central of Georgia R. R. Co.* v. *Murphy,* 196 U. S., 194, as an unlawful interference with interstate commerce. The Georgia statute made the initial carrier absolutely liable if it failed within thirty days after application to inform the shipper in writing when, where, how and by what carrier the freight was lost or damaged, together with the names of witnesses to establish such facts; whereas, our statute, sec. 1710, provides that the carrier shall be excused from liability upon proof that by the exercise of due diligence it has been unable to trace the line upon which the loss or damage occurred. The Georgia statute prevented a carrier from availing itself of a valid contract exempting from liability for loss or damage occurring beyond its own line except upon an onerous condition, which in many cases it could not meet; whereas, the South Carolina statute excuses the carrier if the loss did not occur on its own line and it could not after due diligence comply with the requirement of the statute. Section 2176 provides that the carrier may discharge itself from liability by the production of a receipt in writing for the articles from the connecting carrier, and the act of 1903 makes the bill of lading, etc., issued by the carrier for the freight, etc., *prima facie* evidence of liability for loss or damage to the goods in course of transportation.

The effect of these statutes as applied to interstate shipments is not to regulate interstate commerce, or to burden it, or materially interfere therewith, but to afford a reasonable protection to the shipper, in view of the great difficulty in the way of his proving where the loss occurred, and the relative ease and effectiveness with which the carrier might with reasonable diligence ascertain the facts and communicate to him.

MR. JUSTICE WOODS *concurs in both the above opinions.*