### DUNBAR v. PORT ROYAL &c. RAILWAY COMPANY.

1. COMPLAINT—COMMON CARRIERS.—A complaint which alleged defendant's failure to "ship, transport, and carry," perishable goods to their destination, as per agreement, to plaintiff's damage, states a cause of action. There being a special contract, it was not necessary to allege that defendant was a common carrier.

2. VARIANCE—AMENDMENT.—The complaint having alleged a contract by defendant "to ship, transport, and carry" plaintiff's goods to New York, it was error to admit in proof thereof a bill of lading, whereby defendant only agreed *to forward* to New York, with the stipulations that it "assumes no liability beyond its own rails," and "will not be responsible for delays or damages from unavoidable causes"—the two contracts being different and involving different responsibilities. But possibly this objection might be obviated by permitting an amendment of the complaint.

3. SPECIAL CONTRACT—CONNECTING LINES.—Defendant, a railroad company, agreed by written contract to forward to a consignee in New York, "in accordance with the provisions, stipulations, and exceptions of the general rules and regulations and freight tariffs of the company," a car load of watermelons received from plaintiff, charges to be collected on delivery. The contract also contained these stipulations:

"This company assumes no liability beyond its own rails. This company will not be responsible for delays or damages from unavoidable causes, nor guarantee any special dispatch in the transportation of any article." The watermelons were promptly shipped, but the next connecting road refused to forward unless its charges were prepaid. Defendant at once notified plaintiff, who refused to prepay, and afterwards the fruit was forwarded, reaching New York in a decayed condition by reason of the delay. *Held*, that defendant did not contract to carry beyond its terminus, and was not liable for the loss.

Before ALDRICH, J., Barnwell, November, 1890.

This was an action by T. S. Dunbar against The Port Royal & Augusta Railway Company, commenced in February, 1890, the plaintiff claiming damages from defendant for a loss resulting from its failure to forward watermelons with reasonable dispatch as agreed. The Circuit Judge thus construed the contract in his charge to the jury:

Mr. Dunbar, it seems, shipped certain watermelons from Hattieville, destined for the city of New York, in the State of New York. When he shipped those goods a receipt was given him by the agent; that being a written instrument, it is the duty of the court to charge you as to the meaning of that paper. Just here I would say to you that the reference to the general rules and regulations and freight tariff of the Port Royal and Augusta Railway Company not having been put in evidence before me, I cannot pass upon what these general rules and regulations and freight tariff of that company are. There is no evidence of it here. It states the freight just received was one car of melons, shipped in car No. 168, Port Royal and Augusta Railway Company; weight of the shipment subject to corrections in this instance, 2,400; charges coll., that means collect, $103.20. According to my construction of this contract, it is meant those charges were to be collected at the point of destination, the city of New York. And when the railroad company assumes to carry the goods, it assumes to do so on credit, that is, to perform the duties first, and to be paid in New York, as this thing stipulates.

It goes on: "This company assumes no liability beyond its own rails, nor for freight delivered at stations where are no agents." When this company says it "assumes no liabilities beyond its own

rails," it means what it says; but I hold, and so charge you, that that limitation stated and printed there in a printed notice at the foot of this paper cannot change or modify that express stipulation contained in the writing here in this paper. In other words. this company had a right to make a contract, and if that contract is not carried out according to the terms of it, then the defendant is liable for it, unless it shows that that contract has been defeated from some cause not included in the contract, and from which it is consummated outside. "The company will not be responsible for delays or damages or unavoidable cause, or guarantee any special dispatch." That means what it says; but I charge you that if this defendant company agreed to carry and deliver in New York these melons on credit, that is, to be paid in New York. and some other intervening roads refused to carry these melons on. credit, that is the lookout of the Port Royal Railway Company. It agreed to do that, and so stated it in its contract, and it is bound by its contract. "Guarantee no special dispatch." That is good law, and means just what it says. They don't guarantee any special dispatch, but they should use reasonable and ordinary dispatch, and that is one of the allegations made, and the evidence is for you to pass upon—if the railway company did or did not delay beyond what we call ordinary dispatch.

A railway company is not, under the law, bound for loss of goods upon railroad lines with which it connects, unless it contracts to carry those goods from one point to another; then if that necessarily involves carrying these goods over connecting lines, why, the railroad company must stand by its contract. To illustrate: Here this defendant Port Royal Railway Company takes these goods, and in its contract says that it will carry them for a cost of $103.20 as freight, to be paid in New York city. Now, if some connecting railroad refuses to carry these goods because the freight was not paid, that would be a breach of the contract which this company expressly entered into, and they would be liable. But suppose that these goods had left this Port Royal and Augusta Railroad and were on some other railroad, and those goods were destroyed by fire, or some other cause other than the refusal of the railway company to carry them because the freight was

not prepaid, then it would present a different question, which would be open to whether that would be the liability on the part of the connecting railroad, and therefore whether it was responsible for loss under that liability.

I am requested to charge you by the defendants: "1st. That if the goods were delivered to the defendants to carry to New York, and they offered to deliver them to their usual connecting carrier, and the connecting carrier refused to receive them, unless the freight was prepaid, the defendants would be discharged from all liability caused by the delay, or refusal of the connecting line to receive them, if they used due diligence in notifying the plaintiff on his refusal to pay the freight, unless a contract to carry the freight through to New York, in the State of New York, is proved." Well, gentlemen, that modifies it. As it stands, I have no objection to charge you that request, but I charge you that that contract does require that these defendants should carry these melons through to the city of New York.

"2nd. That under the bill of lading in evidence, the melons were not to be carried by the defendants through to New York, but were to be delivered to an usual connecting carrier, to be forwarded, and upon their delivery to the connecting carrier, the risk of the defendant ceased." I cannot charge you that request, because there is nothing in the contract about delivering to another road, and I must charge you according to the face of the contract. I have already charged you and explained to you as matter of fact the general rule as to liabilities, and in this case I don't feel it necessary to charge you an abstract principle of law simply, which is not, in my judgment, applicable to the question at issue before the jury. It seems this is a written contract, which the parties had a right to make, and the question is whether or not they carried it out.

*Messrs. Elliott & Townsend,* for appellant.

*Mr. Robert Aldrich,* contra.

April 19, 1892.    The opinion of the court was delivered by Mr. Chief Justice McIver.    The plaintiff brings this ac-

tion to recover damages for the loss of a car load of watermelons shipped by plaintiff on defendant's road under a contract, as he alleges, to deliver the same to a designated consignee in the city of New York.   In the complaint the allegations necessary to be noticed are substantially as follows: that on the 17th of July, 1889, the plaintiff delivered to defendant, at one of its stations, a car load of watermelons, consigned to J. A. Judge, in the city of New York; that defendant received said goods, "and agreed to ship, transport, and carry the same" for the freight price of $103.20, to be paid at the point of destination, according to the custom of defendant company at that time and prior thereto; that defendant transported said melons to a station on its road called Yemassee, *en route* for New York, refusing to carry them further unless the freight was paid in advance; that plaintiff received no notice of such refusal until he knew, from the perishable nature of the goods, they must be damaged to such an extent as to render them valueless, and after plaintiff refused to pay the freight as demanded, defendant carried said goods to their destination, but on reaching there they were, by reason of the delay in transportation, damaged to such an extent as to prove a total loss to the plaintiff.

The case came on for trial before his honor, Judge Aldrich, and after the complaint was read, and before reading the answer, which will be hereinafter referred to, the counsel for defendant interposed an oral demurrer, upon the ground that the complaint failed to state facts sufficient to constitute a cause of action, which being overruled, the trial of the cause proceeded.

In the answer, defendant denies the material allegations of the complaint, especially that defendant had agreed "to ship, transport, and carry" said melons to New York, and say that the melons were carried by defendant to Yemassee, and there defendant offered and attempted to deliver them without delay to the Charleston and Savannah Railway Company, whose road connects with defendant's at that point, and is a usual connecting line with defendant's road *en route* to New York, a place beyond the terminus of defendant's road; but that said Charleston and Savannah Railway Company refused to receive said goods unless the freight was prepaid; that defendant used due diligence

in notifying the plaintiff of such refusal, and requested the plaintiff to pay the freight or direct what disposition should be made of the melons, which plaintiff declined to do; that thereafter said Charleston and Savannah Railway Company received said goods from defendant to be forwarded over their road to New York.

In the course of the testimony, plaintiff offered in evidence the bill of lading given by defendant to plaintiff when the melons were shipped, which was objected to upon the ground that such paper set forth a contract different from that set out in the complaint; the difference being in the initials of the agent of the defendant company, which is not insisted upon here, and in the fact that in the contract, as alleged in the complaint, the defendant agreed "to ship, transport, and carry," while that stated in the bill of lading was that the defendant received the goods "to be forwarded in accordance with the provisions, stipulations, and exceptions of the general rules and regulations and freight tariffs of the company." The bill of lading also contains the following stipulations: "This company assumes no liability beyond its own rails. * * * This company will not be responsible for delays or damages from unavoidable causes, nor guarantee any special dispatch in the transportation of any article." The objection to the introduction of the bill of lading was overruled (to which defendant excepted), and it was received in evidence, and a copy thereof appears in the "Case."

Under the charge of the judge, the jury found a verdict in favor of plaintiff, and defendant appeals upon the several grounds set out in the record. These grounds allege error, on the part of the Circuit Judge, in the following particulars, substantially: 1st. In overruling the demurrer. 2nd. In overruling defendant's objection to the introduction of the bill of lading. 3rd. In the construction of the contract evidenced by the bill of lading.

As to the first, we do not think there was any error. If, as was alleged in the complaint, the defendant contracted with the plaintiff "to ship, transport, and carry" his melons to New York, and either failed entirely to perform the contract, or failed to perform it with that reasonable and prompt dispatch that would be implied from the perishable nature of the goods, then unquestionably the defendant would be liable for such

breach of its contract.   As the complaint, reasonably construed, does, in our opinion, state such a contract and its breach by defendant, we think it does state facts, which, if true, would give the plaintiff a cause of action.   The absence of an allegation that defendant was a common carrier, upon which this ground of appeal seems to be mainly rested. cannot affect the question.   The defendant is not sued as a common carrier, but the action is based upon a special contract, which any person, natural or artificial, may make, whether he be a common carrier or not.

The second ground is, we think, well taken.   The contract, as set out in the complaint, is a contract "to ship, transport, and carry" the goods to New York, whereas the contract evidenced by the bill of lading offered in evidence was a contract *to forward* the goods to New York, with a special stipulation, that the defendant company "assumes no liability beyond its own rails," and "will not be responsible for delays or damages from unavoidable causes."   These are distinct and different contracts, involving different responsibilities, as will be seen from the cases which will hereinafter be cited.   It seems to us, therefore, that it was error to allow the plaintiff to offer in evidence a contract different from that set out in the complaint. But as this objection might possibly be obviated by amendment, under the case of *The South Carolina Railroad Company* v. *Barrett*, 12 S. C., 173 (which, however, the writer must say has never commanded the approval of his judgment, though it does command his assent as an authoritative decision of the court of last resort), it is necessary to proceed to the consideration of the last and controlling question in the case, viz., whether the judge erred in his construction of the contract evidenced by the bill of lading.

In *Insurance Company* v. *Railroad Company*, 104 U. S., at page 157, Mr. Justice Harlan says the rule as sanctioned by that tribunal, and adopted in most of the courts of this country, is, "that the carrier, in the absence of a special contract, express or implied, for the safe transportation of goods to their known destination, is only bound to carry safely to the end of its line, and there deliver to the next carrier in the route."   The same rule was recognized in the case of *Railroad*

*Company* v. *Pratt*, 22 Wall., 123, and in that case the distinction between a contract *"to transport"* and a contract *"to forward"* is plainly and distinctly recognized. As said by Mr. Justice Hunt in that case : "Transported or carried are equivalent terms, and quite distinct from the idea of forwarding ;" and as the word "transported" was used in the bill of lading in that case, it was held that the contract bound the carrier to transport or carry beyond its own lines.

In *Crawford* v. *The Southern Railroad Association*, 51 Miss., 222, reported also in 24 Am. Rep., 626, it was held that a railroad company, by simply receiving freight marked for delivery at a point beyond its own lines, does not thereby contract to transport and deliver at the point of destination, and is only bound to seasonably deliver the freight to its connecting line on the usual route to the point of destination. In that case the terms of the bill of lading were, so far as the question we are considering, practically identical with the terms of the bill of lading in this case, for it acknowledged receipt of the goods, "to be forwarded to Birmingham, Alabama," a point with which defendant's line did not connect, except by intervening lines of other companies. To the same effect see *Grindle* v. *Eastern Express Company*, 67 Me., 317, reported, also, in 24 Am. Rep., 31 ; *Knight* v. *Providence &c. Railroad Company*, 13 R. I., 572, reported, also, in 43 Am. Rep., 46 ; *Burroughs* v. *Norwich &c. Railroad Company*, 100 Mass., 26, also reported in 1 Am. Rep., 78 ; and also *American Express Company* v. *Second National Bank*, 69 Penn. St., 394, also reported in 8 Am. Rep., 268. In that case Sharswood, J., points out the distinction between a contract to carry and a contract to forward. The same doctrine is, it seems to us, justly deducible from the decision of this court in the case of *The Piedmont &c. Company* v. *C. & G. Railroad Company*, 19 S. C., 353, though the case is not exactly in point; for there it is laid down that the obligation on the part of a carrier to transport goods beyond its own line arises only from the contract of the parties, and that even the payment of the through freight to a point beyond its own terminus does not make it a common carrier over other roads to the point of destination. See, also, *Felder* v. *C. & G. R. R. Co.*, 21 S. C., 35.

Now, in this case the contract on the part of the defendant being to forward and not to transport, accompanied with the express stipulations, that defendant "assumes no liability beyond its own rails," we think the Circuit Judge erred in construing the bill of lading as a contract to carry the goods to New York. This case is very different from that of *Kyle* v. *Laurens Railroad Company*, 10 Rich., 382, for there the contract stated in express terms that the cotton was *to be delivered* in Charleston. The fact that the contract in this case provided for the payment of the entire freight in New York, could not affect the question of defendant's liability, unless it had appeared that defendant had refused or delayed transporting the goods unless the freight due it should be first paid. When defendant company transported the goods to the nearest connecting line, by the usual route to New York, and there offered and attempted to deliver them to such connecting line, to be forwarded to the point of destination, it fully performed its part of the contract, and cannot be held, in the face of its express stipulation to the contrary, liable for any damages occurring "beyond its own rails."

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the case be remanded for a new trial.