### CAVE v. CAROLINA MIDLAND RY. CO.

PLEADINGS—COMMON CARRIER—FREIGHTS—DAMAGES.—In order to maintain an action, under 21 Stat., 822, against a common carrier, for damages to freight shipped over connecting lines, the complaint must allege that the freight was shipped under a contract, under the terms of which the responsibility of each carrier ceases upon delivery of the freight to the connecting carrier *"in good order."* Divided Court.

Before WATTS, J., Barnwell, March, 1898.    Affirmed.

Action for damages to freight by L. M. Cave v. Carolina Midland Railway Company. From order sustaining demurrer, plaintiff appeals.

*Messrs. Bellinger, Townsend & O'Bannon,* for appellant, cite: 21 Stat., 822; Ga. Code, 2084, 2317, *et seq.;* 29 S. E. R., 21; 23 S. E. R., 416; 15 S. E. R., 358; 104 U. S., 157; 48 Ga., 533; 23 S. W. R., 801; 14 S. R., 114; 26 S. C., 258.

*Mr. Robert Aldrich,* contra, cites: 21 Stat., 822; 76 Ga., 597.

Nov. 2, 1898.    The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER. This is an action to recover damages for the loss of one horse, and for injuries to several

other animals, occasioned by the alleged negligence of a common carrier in the transportation of said animals from Atlanta, in the State of Georgia, to Barnwell, in the State of South Carolina. The plaintiff bases his right to recover exclusively upon the terms of an act passed by the General Assembly of this State, and approved 5th of January, 1895 (21 Stat., 822). Upon reading the complaint, the defendant interposed an oral demurrer to the complaint, upon the ground that the facts stated therein were not sufficient to constitute a cause of action, in that there was no allegation in the complaint "that the contract under which the freight was shipped provided that the responsibility of each of the carriers shall cease upon the delivery to the connecting line 'in good order.' " After hearing argument, his Honor, Judge Watts, rendered judgment, sustaining the demurrer and dismissing the complaint.

From this judgment plaintiff appeals upon a single exception, imputing error to the Circuit Judge in sustaining the demurrer upon the ground that the facts stated in the complaint were insufficient to give the plaintiff a cause of action under the statute above referred to. It becomes necessary, therefore, first, to ascertain what are the facts stated in the complaint; and, second, whether the facts alleged are sufficient to constitute a cause of action under the statute. In the first paragraph of the complaint it is alleged that the defendant is a railroad corporation, and is engaged in the transportation of freight, as a common carrier, in connection with the Georgia Railroad Company and the South Carolina and Georgia Railroad Company, between the city of Atlanta, in the State of Georgia, and the town of Barnwell, in the State of South Carolina. The second paragraph of the complaint reads as follows: "That on the 17th day of December, A. D. 1896, at Atlanta, in the State of Georgia, one J. B. Thompson, as agent of the plaintiff, delivered, on behalf of plaintiff, one carload of live stock, containing eighteen horses and ten mules, the property of the plaintiff, of the value of $1,350, to the Georgia Railroad

32—53

Company, a connecting carrier with the South Carolina and
Georgia Railroad Company, and the defendant, between At-
lanta, Ga., and Barnwell, S. C., consigned to the plaintiff as
consignee, at Barnwell, S. C., and in consideration of a rea-
sonable compensation, as freight money, to be paid by the
plaintiff to the defendant, upon the arrival of said stock at
their destination and delivery to the plaintiff as consignee;
and the said Georgia Railroad Company thereupon received
said stock, and undertook and agreed to transport the same
by the Georgia Railroad Company to its freight station at
Augusta, ready to be delivered to such company or carrier
whose line might be considered a part of the route to the
destination of said stock, it being distinctly understood and
agreed that the responsibility of the Georgia Railroad Com-
pany should cease at the station where delivered to such
carrier, the said condition to apply to and govern the trans-
portation of this stock over any and all roads which should
form a part of the route to the destination named." In the
third paragraph it is alleged: "That said carload of stock
was thereupon carried by said Georgia Railroad Company
to Augusta, Ga., and there delivered to the South Carolina
and Georgia Railroad Company, whose line was considered
a part of the route to their destination at Barnwell, S. C.,
and were carried by said South Carolina and Georgia Rail-
road Company to Blackville, S. C., where it was delivered
to the defendant, whose line was a part of the route to Barn-
well, S. C., a station on said line, and was carried and de-
livered by defendant to the plaintiff, who paid defendant
$51.50, the reasonable charges for freight at Barnwell, S.
C." In the fourth paragraph it is alleged: "That while said
carload of stock was being carried under said contract men-
tioned in the second paragraph of the complaint," one of
the horses was negligently lost or destroyed, and nine other
animals were injured and damaged, "through the negligence
and carelessness of the carrier;" but it is not alleged, either
in this or any other paragraph of the complaint, which one
of the three carriers was responsible for such negligence.

In the fifth and last paragraph of the complaint it is alleged that on the 2d of January, 1897, the plaintiff gave notice to the defendant of the said loss, damage, and destruction, and that, although more than forty days had elapsed since such notice was given, the same has never been adjusted, nor did the defendant trace such freight and inform plaintiff when, where, and by which carrier the said freight was lost, damaged or destroyed. The statute upon which this action is based reads as follows: "That when, under contract for shipment of freight or express over two or more common carriers, the responsibility of each or any of them shall cease upon delivery to the connecting line 'in good order;' and if such freight or express has been lost, damaged or destroyed, it shall be the duty of the initial, delivering or terminal road, upon notice of such loss, damage or destruction being given to it by the shippers, consignee or their assigns, to adjust such loss or damage with the owners of said goods within forty days; and upon failure to discharge such duty within forty days after such notice, or to trace such freight or express, and inform the said party so notifying when, where, and by which carrier the said freight or express was lost, damaged or destroyed, within said forty days, then said carrier shall be liable for all such loss, damage or destruction, in the same manner and to the same extent as if such loss, damage or destruction occurred on its lines," followed by a proviso, the terms of which are not pertinent to the present inquiry. The manifest object of this act was to give a shipper, or his consignee, a right of action only in cases where the goods were shipped under a particular kind of contract, which is specified in the act, viz: a contract for the shipment of freight over two or more connecting lines of common carriers, where, under the terms of the contract, the responsibility of each carrier ceases upon delivery of the freight to the connecting carrier "*in good order.*" This is clear from the express terms of the statute: "When under contract for shipment of freight or express over two or more common carriers, the responsibility of

each or any of them shall cease upon delivery to the con-
necting line 'in good order,'" &c. It is observable that
these words are put within quotation marks in the statute,
indicating that they are taken from the contract of ship-
ment referred to in the act. It is obvious, from an inspec-
tion of the complaint hereinabove set out, that the plaintiff
has failed to allege that his stock was transported under
such a contract of shipment as that specified in the act.
There is no allegation in the complaint that the responsi-
bility of any one of the three carriers entrusted with the
transportation of this stock was to cease upon the delivery
of the same to the connecting carrier *in good order*, and
this omission is fatal to the complaint. For when one seeks
to avail himself of a special remedy provided by statute, the
rule is well settled that he must be careful to bring his
case, both by allegation and proof, within the terms of the
statute. The Georgia cases cited by counsel for appellant
do not apply to this case, for in none of them was the ques-
tion presented in this case either raised or considered. In
one of those cases—*S. F. & W. Railway Co.* v. *Austin*, 29
S. E. Rep., 11—the Chief Justice, in delivering the opinion
of the Court, says: "The record shows that by the contract
of shipment the responsibility of each carrier was 'to cease
upon delivery to the next *in good order*'" (italics ours);
while here the record fails to show anything of the kind.
So in the case of *Forrester* v. *Georgia Railroad Co.*, 19 S.
E. Rep., 811, the bill of lading showed that the melons
were received by the initial carrier *in good order;* and when
the same case was again before the Court (23 S. E. Rep.,
416), it was stated in the opinion that "it appears that the
melons were in good order when received by the initial
carrier," and the Court held that, in the absence of any
evidence to the contrary, the presumption would be that
they were in like good order when delivered to the connect-
ing carrier. In this case, however, there is no allegation
that the stock was in good order either when delivered to
the initial or any other carrier. Indeed, these Georgia

cases seem to imply that, in order to sustain an action under a statute similar to, though not identical with, ours, it is necessary that it should appear that the freight was being transported under a contract of shipment whereby the responsibility of each carrier terminated upon the delivery of the freight *in good order* to the connecting carrier, and, therefore, tend rather to support than conflict with our view.

I think, therefore, that the judgment of the Circuit Court should be affirmed; but as this Court is equally divided, the judgment of the Circuit Court stands affirmed, under the Constitution of this State.

MR. JUSTICE JONES *concurs.*

MR. JUSTICE GARY, *dissenting.* As I cannot concur in the opinion of Mr. Chief Justice McIver, I will state briefly the reasons for my dissent. The general rule is that when a company is chartered for railroad transportation, it is a common carrier over its own lines only, unless by contract, usage or character of business, it has become so beyond its *termini,* or over connecting lines. *Hill* v. *R. R. Co.,* 43 S. C., 461. It is also a well settled principle that the connecting line becomes liable as a common carrier, as soon as goods are delivered to it for transportation by the initial road. This liability is extended by section 1720, Revised Statutes (1893) which is as follows: "In case of the loss of, or damage to, any article or articles delivered to any railroad corporation for transportation, over its own and connecting roads, the initial corporation or corporations first receiving the same shall, in every case, be liable for such loss or damage, but may discharge itself from such liability by the production of a receipt in writing for the said article or articles, from the corporation to whom it was its duty to deliver such article or articles, in the regular course of transportation. In which event, the said connecting road or roads shall be severally so liable, but may in succession and like manner discharge themselves respectively therefrom," &c. It will thus be seen that not

only the initial road, but all the connecting lines to whom the goods are delivered for transportation, are made liable as common carriers. The foregoing section, however, provides in what manner such liability may be discharged by the respective roads. The act of 1895, which is set out in the opinion of Mr. Chief Justice McIver, was not intended to affect the foregoing liability of the several roads, in the first instance, but to provide in what manner the said liability could be discharged. The complaint alleges that the property was delivered to the defendant for transportation, as one of the connecting lines; it, therefore, became liable as a common carrier. The defendant was the "*termini*" road, and the plaintiff alleges that he gave notice of his loss and damage to the defendant, in order that the same might be adjusted. That although more than forty days have elapsed after such notice was given, the same has not been adjusted, nor did the defendant trace such freight, and inform the plaintiff when, where and by which carrier the said freight was lost, damaged or destroyed. The act of 1895 shows that the defendant was liable for the loss, damage or destruction of the property. The discharge of the defendant from liability in the manner provided by law was a matter of defense, and formed no part of plaintiff's cause of action. The liability of the defendant was fixed by statute, and even if there had been a contract against such liability, it would have been null and void as against public policy.

I, therefore, think the judgment of the Circuit Court should be reversed.

MR. JUSTICE POPE concurs with MR. JUSTICE GARY.