6636

VENNING v. ATLANTIC COAST LINE R. R. CO.

1. SKIPPER v. S. A. L. RY., 75 S. C., 276, distinguished from this case.
2. CONSTITUTIONAL LAW—CARRIER—FREIGHT.—THE ACT, 24 STAT., 1, making each carrier the agent of its connecting carrier from whom it receives freight and making each liable for the delicts of its connecting carrier is an infringement on the interstate commerce clause of the Federal Constitution, but it is not in contravention of the fourteenth amendment to the Federal Constitution, or of sec. 5, art I, of the Constitution of this State, as denying to the carriers in this State the equal protection of the laws.
3. IBID.—IBID.—IBID.—The act, 24 stat., 81, providing penalty for failure to pay or adjust loss of or damage to freight in a given time, construed to apply only to loss or damage to freight occurring on line of carrier sued in this State.

4. IN CONSTRUING STATUTES a *proviso* cannot be extended by implication to cover that which is opposed to the express language of the main enactment.

Before ———, J., Clarendon, ———. Reversed.

Action by S. R. Venning against Atlantic Coast Line R. R. Co. From Circuit judgment affirming judgment of Magistrate S. M. Youmans, defendant appeals.

The following are the statutes referred to and considered in the opinion:

Code of 1902, Sec. 1710. When under contract for shipment of freight or express over two or more common carriers, the responsibility of each or any of them shall cease upon delivery to the connecting line "in good order," and if such freight or express has been lost, damaged or destroyed, it shall be the duty of the initial, delivering or terminal road, upon notice of such loss, damage or destruction being given to it by the shippers, consignee, or their assigns, to adjust such loss or damage with the owners of said goods within forty days, and upon failure to discharge such duty within forty days after such notice, or to trace such freight and inform the said party so notifying when, where and by which carrier the said freight or express was lost, damaged or destroyed, within said forty days, then said carrier shall be liable for all such loss, damage or destruction in the same manner and to the same extent as if such loss, damage or destruction occurred on its lines: *Provided,* That if such initial, terminal or delivering road can prove that, by the exercise of due diligence, it has been unable to trace the line upon which such loss, damage or destruction occurred, it shall thereupon be excused from liability under this section.

AN ACT TO FURTHER DEFINE CONNECTING LINES OF COMMON CARRIERS AND TO FIX THEIR LIABILITIES.

SECTION 1. *Be it enacted* by the General Assembly of the State of South Carolina, That all common carriers over whose transportation lines, or parts thereof, any freight,

baggage or other property received by either of such carriers for through shipment or transportation by such carriers on a contract for through carriage, recognized, acquiesced in or acted upon by such carriers, shall in this State, with respect to the undertaking and matters of such transportation, be considered and construed to be connecting lines, and be deemed and held to be the agents of each other, each the agent of the others, and all the others the agents of each, and shall be held and deemed to be under a contract with each other and with the shipper, owner and consignees of such property for the safe and speedy through transportation thereof from point of shipment to destination; and such contract as to the shipper, owner or consignee of such property shall be deemed and held to be the contract of each of such common carriers; and in any of the Courts of this State, any through bill of lading, way bill, receipt, check or other instrument issued by either of such carriers, or other proof showing that either of them has received such freight, baggage or other property for such through shipment or transportation, shall constitute *prima facie* evidence of the subsistence of the relations, duties and liabilities of such carriers as herein defined and prescribed, notwithstanding any stipulations or attempted stipulations to the contrary by such carriers, or either of them.

SEC. 2. For any damages for injury, or damage to, or loss, or delay of any freight, baggage or other property sustained anywhere in such through transportation over connecting lines, or either of them, as contemplated and defined in the next preceding section of this act, either of such connecting carriers which the person or persons sustaining such damages may first elect to sue in this State therefor, shall be held liable to such person or persons, and such carrier so held liable to such person or persons shall be entitled in a proper action to recover the amount of any loss, damage or injury it may be required to pay such person or persons from the carrier through whose negligence the losses, damage or injury was sustained, together with costs of suit.

Sec. 3. That this act shall take effect immediately upon its approval by the Governor, and all acts and parts of acts inconsistent with this act are hereby repealed.

Approved the 13th day of May, A. D. 1903.  24 Stat., 1.

An Act to Regulate the Manner in which Common Carriers Doing Business in this State shall Adjust Freight Charges and Claims for Loss or Damage to Freight.

Section 1. *Be it enacted* by the General Assembly of the State of South Carolina, That from and after the passage of this act, all common cariers doing business in this State shall settle their freight charges according to the rate stipulated in the bill of lading: *Provided,* The rate therein stipulated be in conformity with the classification and rates made and filed with the Interstate Commerce Commission, in case of shipments from without this State, and with those of the Railroad Commissioners of this State, in case of shipments wholly within this State; by which classification and rates all consignees shall in all cases be entitled to settle freight charges with such carriers; and it shall be the duty of such common carrier to inform any consignee or consignees of the correct amount due for freight, according to such classifications and rates; and upon payment and tender of the amount due on any shipment, or on any part of any shipment, which has arrived at its destination, according to such classifications and rates, such common carrier shall deliver the freight in question to the consignee or consignees, and any failure or refusal to comply with the provisions hereof shall subject each such carrier so failing or refusing to a penalty of fifty dollars for each such failure or refusal, to be recovered by any consignee or consignees aggrieved by suit in any Court of competent jurisdiction.

Sec. 2. That every claim for loss of or damage to property while in the possession of such common carrier shall be adjusted and paid within forty days, in case of shipments wholly within this State, and within ninety days in case of

shipments from without this State, after the filing of such claim with the agent of such carrier at the point of destination of such shipment: *Provided,* That no such claim shall be filed until after the arrival of the shipment, or of some part thereof, at the point of destination, or until after the lapse of a reasonable time for the arrival thereof. In every case such common carrier shall be liable for, the amount of such loss or damage, together with interest thereon from the date of the filing of the claim therefor until the payment thereof. Failure to adjust and pay such claim within the periods respectively herein prescribed shall subject each common carrier so failing to a penalty of fifty dollars for each any every such failure, to be recovered by any consignee or consignees aggrieved in any Court of competent jurisdiction: *Provided,* That unless such consignee or consignees recover in such action the full amount claimed, no penalty shall be recovered, but only the actual amount of the loss or damage, with interest as aforesaid: *Provided, further,* That no common carrier shall be liable under this act for property which never came into its possession, if it complies with the provisions of section 1710, vol. 1, of the Code of Laws of South Carolina, 1902.

SEC. 3. That any common carrier, upon complying with the provisions of this act, shall have all the rights and remedies herein provided for against the common carrier from which it received the freight in question.

SEC. 4. That causes of action for the recovery of the possession of the property shipped, for loss or damage thereto and for the penalties herein provided for, may be united in the same complaint.

SEC. 5. That all acts or parts of acts inconsistent with this act be, and the same are hereby, repealed.

Approved the 23d day of February, A. D. 1903. 24 Stat., 81.

*Messrs. P. A. Willcox, Henry E. Davis,* and *Wilson* and *DuRant,* for appellant, cite practically the same authorities

as they cite in the case of *Lewis* against *A. C. L. R. R. Co.,* *ante.*

*Mr. W. C. Davis,* contra, cites practically the same cases he cites in *Lewis* v. *A. C. L. R. R. Co., ante.*

August 31, 1907.   The opinion of the Court was delivered by

MR. JUSTICE WOODS.   The Belknap Hardware Company, in January, 1905, delivered to the Southern Railway Company at Louisville, Ky., a steel range and warming closet, consigned to the plaintiff at Manning, S. C.

The defendant, Atlantic Coast Line Railroad Company, the terminal carrier, delivered to the plaintiff the warming closet only, and this action was brought in a magistrate's court to recover twenty-one dollars for failure to deliver the range and fifty dollars, the statutory penalty for failing to adjust and pay the claim within ninety days.

The allegation of the complaint is, that the Southern Railway Company undertook carriage and delivery of the goods to Manning, S. C., for itself and the defendant, its connecting line.   But the bill of lading expressly provides: "No carrier shall be liable for loss or damage not occurring on its portion of the route."

The defendants' clerk, whose duty it was to check the contents of cars turned over by the Southern Railway to the Atlantic Coast Line Railroad at Columbia, testified the range was marked short on his book and was never received by the Atlantic Coast Line Railroad.   The magistrate rendered judgment in favor of the plaintiff for twenty-one dollars damages and fifty dollars for failing to adjust and pay the claim in ninety days, and on appeal the Circuit Court affirmed the judgment.

It was held in *Willett* v. *Ry. Co.,* 66 S. C., 477, that when property received by the initial carrier in good condition is delivered by the terminal carrier in damaged condition, the burden is on the terminal carrier to show the damage did

not occur on its own line. The same principle was held to apply to the loss of a part of a carload of goods in *Walker* v. *Ry. Co.,* 76 S. C., 308, and in *Bradley* v. *Ry. Co.,* 77 S. C., 317, it was held to extend to the loss of a part of several articles shipped under one bill of lading. Applying this last case, the defendant's delivery of the warming closet cast upon it the burden of showing that it had never received the range. The credibility of the testimony that the range had not come into the possession of the defendant was for the magistrate and the Circuit Court to pass on, and had the record disclosed that this evidence was disbelieved on any reasonable ground, the judgment would be affirmed, because this Court could not disturb a finding of fact that the presumption of loss by the terminal carrier had not been refuted by credible testimony. The record makes it clear, however, the judgment was not upon this ground but on the statute of 1903 (24 stat., 1), under which the defendant as one of the connecting carriers would be liable without respect to whether the range was lost on its line or on that of another carrier. If the act of 1903 is a valid statute, the evidence that the range was never delivered to the defendant carrier would be immaterial, and it was no doubt so regarded by the Circuit Court. The vital question, therefore, is whether this act of May, 1903, must be held unconstitutional as an attempt to regulate interstate commerce. In *Skipper* v. *S. A. L. Ry. Co.,* 75 S. C., 276, an exception raising the question of the constitutionality of this act was overruled, but the main question considered in that case was the constitutionality of sections 1710 and 2176 of the Civil Code. We propose now to consider the question of constitutionality of the act of May, 1903, as if it had not been heretofore made.

The statute was intended to make radical changes in the law as to the liability of carriers for losses or damage occuring on connecting lines. The extent of the changes contemplated will be made evident by viewing the state of the law

as it appears from the adjudications of the Supreme Court of the United States and the Supreme Court of this State, with respect to the relations of connecting lines with each other, and to the owners of goods in course of transportation, and with respect to the right of such carriers to contract, before the enactment of the statute, in contrast with the law as it would be under the statute. The Supreme Court of the United States held in *Michigan Central R. R. Co.* v. *Mineral S. M. Co.,* 83 U. S., 318, 21 L. Ed., 297, that in the absence of a contract to the contrary the liability of a common carrier ended with its prompt delivery of the property in good order to the next connecting carrier. This rule was recognized and followed by the same Court in *R. R. Co.* v. *Pratt,* 89 U. S., 129, and *St. Louis Ins. Co.* v. *R. R. Co.,* 104 U. S., 146, 26 L. Ed., 679, and other cases. The law was held to be the same in this State in *Piedmont etc. R. R. Co.* v. *C. & G. R. R. Co.,* 19 S. C., 353; *Dunbar* v. *Ry. Co.,* 36 S. C., 110, 15 S. E., 357; *Hill* v. *R. R. Co.,* 43 S. C., 461, 21 S. E., 347. Under these cases it is obvious a stipulation in the bill of lading, limiting the liability of each carrier to its own line, would be a reasonable limitation. In *Lewis* v. *R. R. Co.,* 25 S. C., 249, it was held the initial carrier could not without special authority make a contract binding upon the terminal carrier.

Terminal and intermediate carriers were held entitled to the benefit of any reasonable stipulations in the bill of lading limiting their liability, in *Harby* v. *So. Ry. Co.,* 75 S. C., 321.

The act of 1882 (Civil Code, sec. 2176) provided the initial carrier should be liable for loss or damage to goods until it discharged itself by showing a written receipt from the carrier to which it was its duty to deliver it; and when the initial carrier so discharged itself, the successive connecting carriers were made liable in the like manner, with the right to discharge themselves by like written receipt from the next carrier. The act further provided, that any carrier by wilfully failing or refusing to produce the written receipt

of the next carrier, on the demand of any one interested, lost the benefit of it in any action brought against the carrier for the loss or damage of the property. This act was held constitutional in *Skipper* v. *S. A. L. Ry.*, 75 S. C., 276, and there is no ground to doubt the soundness of that conclusion.

The act did nothing more than relieve persons interested in property lost or damaged in transit of intolerable hardship, by fixing the kind of evidence a carrier shown to have been in actual possession of the property should take, preserve and produce that it had been properly delivered to another carrier. It merely made a rule of evidence less drastic than that which was held to be reasonable and valid in *Richmond &c. Co.* v. *Patterson Tobacco Co.*, 169 U. S., 311, 42 L. Ed., 759. The section of the Virginia Code under consideration in that case was: "When a common carrier accepts for transportation anything directed to a point of destination beyond the terminus of his own line or route, he shall be deemed thereby to assume an obligation for its safe carriage to such point of destination, unless, at the time of such acceptance, such carrier be released or exempted from such liability by contract in writing, * * * if such thing be lost or injured, such common carrier shall himself be liable therefor, unless, within a reasonable time after demand made, he shall give satisfactory proof to the consignor that the loss or injury did not occur while the thing was in his charge."

In holding the statute to be the legitimate exercise by the State of Virginia of the power to determine the form in which contracts may be proved, not amounting to a regulation of interstate commerce, the Court says, at page 314: "The inadequacy of the bill of lading to protect the carrier from liability beyond its own line resulted, it is true, from the statute, but not because the statute forbade the carrier from contracting so as to limit his liability, but because the contract which he did make was not in the form required by law, and therefore was not evidence that there was such a contract. Indeed, the entire argument, upon which it is

asserted that error was committed by the Court below, but manifests in varying forms of statement the fallacy already noticed, that is, it comes from obscuring the difference between substance and form, between a power to contract and the asserted right in availing of the authority, to disregard the requisites essential to show a valid contract, and this confusion also marks the difference between the case now presented and the very many adjudged cases cited by the plaintiff in error in support of its proposition."

The act of May, 1903, now under consideration, is entirely different in scope from the Virginia statute and our statute of 1882. It goes far beyond prescribing a rule of evidence or the form of contract. By it, the General Assembly has undertaken to make a complete change in the legal relations of connecting carriers to each other and to the owners of goods in transit, and in the right of such carriers to contract. The act provides that all carriers which recognize, acquiesce in, or act upon a contract for through shipment shall be statutory connecting carriers and, as such, agents of each other with respect to the matter of transportation, and they shall be under contract each with all the others, and with the shipper, owner and consignee for safe and speedy transportation of the property from the point of shipment to destination. Any through bill of lading, issued by any one of such carriers, showing that any one of them received the property for through transportation. is made *prima facie* evidence of the agency of each other and all the others, and of the contract of each and all of such carriers with each other and with the owner to transport the property with safety and speed from the point of shipment to destination; and against this *prima facie* evidence of agency and contract the express stipulations of the parties themselves are made unavailing.

In consonance with these provisions it is further enacted, the person sustaining damage or loss shall have the right of recovery against any one of the connecting carriers he may choose to sue; the liability being unaffected by proof that

the property had been lost or damaged on another line, or had never come into the possession of the carrier sued. The carrier singled out by the shipper, owner, or consignee, is in turn allowed to recover from the carrier through whose negligence the loss, damage, or injury, was sustained, together with costs.

In *Central Ry. Co.* v. *Murphey,* 196 U. S., 194, 49 L. Ed., 444, the Supreme Court of the United States held a statute of Georgia unconstitutional as to interstate commerce, which imposed upon the initial or any connecting carrier, as a condition of availing itself of a valid contract of exemption from liability beyond its own line, the duty of tracing the freight and informing the shipper in writing, when, where, and how, and by which carrier, the freight was lost, damaged, or destroyed, and of giving the names of the parties and their official position, if any, by whom the truth of the facts set out in the information could be established.

In *Skipper* v. *Ry. Co., supra,* this Court held section 1710 of Civil Code constitutional. Pointing out the particulars in which that section differed from the Georgia statute, which had been declared unconstitutional in *Central Ry. Co.* v. *Murphey, supra,* Mr. Justice Jones uses this language: "The Georgia statute made the initial carrier absolutely liable if it failed within thirty days after application to inform the shipper in writing when, where, how, and by what carrier, the freight was lost or damaged, together with the names of witnesses to establish such facts; whereas, our statute, section 1710, provides that the carrier shall be excused from liability upon proof that, by the exercise of due diligence, it has been unable to trace the line upon which the loss or damage occurred. The Georgia statute prevented a carrier from availing itself of a valid contract exempting from liability for loss or damage occurring beyond its own line, except upon an onerous condition, which in many cases it could not meet; whereas, the South Carolina statute excuses the carrier if the loss did not occur on its own line and it could not after due diligence comply with the statute."

The act of 1903, now under consideration, goes as far beyond the Georgia statute as section 1710 fell behind it. The Georgia statute was held to be unconstitutional in that it made one connecting carrier liable for the delict of another, unless it exempted itself by giving to the party interested, information within thirty days as to the particulars of the loss. The requirement that the carrier should obtain and give this information was, as the Court held, so onerous as to amount to an illegal attempt to regulate interstate commerce. Still, under the Georgia statute, the carrier had the chance to save itself by giving the information required. In our statute there is no means of escape for a carrier which recognizes, acquiesces in, or acts upon the contract of the initial carrier for through shipment, however innocent from liability for the breach of duty of a connecting carrier.

The far-reaching character of the attempt to regulate interstate commerce will be still more apparent on viewing another feature of the statute. The provision that the carrier selected for liability by the owner of the goods should have the right of recovery from the carrier actually in default, to compensate for its own liability to the owner, would be of no avail against the real defaulting carrier operating entirely outside the State. For the State law can have no extra-territorial effect. A railroad operating in Kentucky cannot be made the agent of a railroad in South Carolina, or liable for its default, or subject to a suit by the South Carolina railroad for breach of duty to a shipper, by authority of a South Carolina statute. Therefore, if this statute is given effect, a carrier operating on an interstate line partly in this State, upon receiving freight in Georgia upon a connecting line, under a bill of lading issued by a Kentucky railroad, would have to pay for the loss or damage arising from the negligence of the Kentucky road, without any recourse against the defaulting road. Obviously, the practical result would be that the loss and damage on all through shipments from the entire country into South Carolina would fall on the interstate roads coming into this State,

to the exemption of all connecting roads for their own defaults. On principle, as well as under the authority of *Central R. R. Co.* v. *Murphey,* it is impossible to avoid the conclusion that the act of May, 1903, here under consideration, is unconstitutional.

The defendant submits that the act is obnoxious to the fourteenth amendment of the Constitution of the United States and section five, article I, of the Constitution of South Carolina, in that it denies to common carriers the equal protection of the law; and should be declared void even as to the transportation of goods by connecting lines entirely within the State. The argument in support of this proposition is strong, but we do not think it is conclusive. While the law making branch of the State government has no power to require persons or corporations to make contracts, it has in general the power to regulate the business of public transportation within its borders. Considered with respect to such business, in this act, the General Assembly has in effect forbidden a common carrier to recognize, acquiesce in, or act upon a through contract of shipment made by a shipper, owner, or consignee with another carrier, except upon condition that it shall become liable for any default of such other carrier. But the carrier may avoid this liability for the default of another by refusing to recognize, acquiesce in, or act upon the through contract of shipment. A carrier, it is true, is required by section 2177 of the Civil Code to forward freight sent on another road "according to the directions contained thereon or accompanying the same;" and we think aside from this statute, the common law imposes the obligation upon the carrier to receive and forward goods tendered by another carrier, just as if they were tendered by the owner. But in doing so it need not recognize, acquiesce in, or act upon the through bill of lading. It may receive the goods, give its own receipt, charge its own freight and in all respects repudiate or disregard the through bill of lading. By thus refusing to recognize, acquiesce in, or act upon the through bill of lading it would avoid liability

for the default of another. It cannot, therefore, be said that the statute denies to the carrier the right to prosecute its business, except upon condition that it shall become liable for the default of others.

It remains to consider whether the judgment of the Circuit Court in this case can be sustained under section 1710 of the Civil Code or under the act of February, 1903 (24 Stat., 81).

As to section 1710, it is only necessary to refer to the case of *Cave* v. *Ry. Co.,* 53 S. C., 496, 31 S. E., 359, where it was held no relief could be given under this section unless the complaint alleged shipment under a contract providing that the responsibility of each carrier should cease upon the delivery of the freight to a connecting carrier "in good order." There is no allegation of the kind in this case; on the contrary it is evident from the complaint, the action was intended to rest on the invalidity, under the act of May, 1903 (24 Stat., 1), of such a contract as section 1710 contemplates. Section 1710, therefore, can have no application.

We come, then, to the act of 1903 (24 Stat., 81), which it is convenient to designate as the act of February, 1903, to distinguish it from the statute already considered, and held unconstitutional, passed in May, 1903 (24 Stat., 1).

We are not concerned with the first section which relates to freight charges and the duty of the carrier to deliver goods on payment of the charges after they have reached destination.

The section of main importance here is the second, which provides for the recovery for loss of, or damage to freight; and penalties for failure to adjust and pay such loss or damage within a certain time. The question vital to this case is whether the statute can be construed to impose upon one connecting carrier, liability for the default of another, unless such carrier obtains and gives the information, or uses due diligence to obtain it as provided in section 1710 of the Civil Code. We do not think it can be so construed.

The main enactment as to the recovery of damages and penalties thus begins in section two: "That every claim for loss of, or damage to property *while in the possession of such common carrier* shall be adjusted and paid within forty days," &c. The words we have italicized clearly limits the loss and damage which a carrier is required to adjust and pay for, to that which befalls while the goods are in the possession of such carrier, and excludes the idea of liability for loss or damage to the goods while in the possession of another carrier.

It is true there is a proviso at the end of this section "that no common carrier shall be liable under this act for property which never came into its possession, if it complies with the provisions of section 1710, vol. 1, of the Code of Laws of South Carolina, 1902." But as the body of the act does not make the carrier liable at all "for goods which never came into its possession;" a *proviso* which exempts from liability for loss of, or damage to such goods on certain conditions can have no effect. The act imposes no liability to which the exemption can be applied.

The rule is that all parts of a statute, including *provisos,* are to be construed together, and effect given if possible to all. But it is contrary to reason as well as authority to *extend by implication* a *proviso* to cover that which is opposed to the express language of the main enactment. *Southgate* v. *Goldthwaite,* 1 Bail., 367; *U. S.* v. *Dickson,* 15 Peters, 141; The Irresistible, 7 Wheat., 551; 26 Am. & Eng. Enc., 681; Endlich on Statutes, secs. 184-185. The fact that the statute is penal adds force to this conclusion. We are of the opinion that the *proviso* of section 2 has no effect, and the act only imposes penalties upon the carrier for failing to adjust claims for loss, occurring while the goods are in its own possession.

It follows, the plaintiff in this case cannot sustain his recovery on the ground that the defendant was liable under the act of February, 1903, for goods lost by a connecting carrier because it failed to obtain and give information of the kind

required in cases falling under that act, or to use due diligence to obtain such information.

This penalty act of February will apply to the case if the finding on the new trial should be, that the loss occurred on the defendant's road, but not otherwise. It is attacked as unconstitutional under the interstate commerce clause of the Constitution of the United States. That question is discussed and decided against he defendant's contention in *Charles* v. *A. C. L. R. R. Co., ante* 36.

The judgment of this Court is, that the judgment of the Circuit Court be reversed and the case remanded to the magistrate's court for a new trial.