## 7401

### MAYFIELD v. SOUTHERN RY.

1. CARRIER—LIVE STOCK—WILFULNESS.—The evidence in this case did not warrant sending the issue of wilfulness on part of terminal carrier in transporting a car of horses.

2. IBID.—RAILROADS—BILL OF LADING.—The provisions of section 1710 of Code, 1902, to the effect that terminal carrier is liable for injury to freight coming over connecting lines, if it does not, on demand, give consignee information, when, where and upon what line the injury occurred, does not apply, except where the shipment is under a bill of lading providing that the responsibility of each carrier ceases on delivery to connecting carrier in good condition.

Before WILSON, J., Bamberg, Fall term, 1908. Reversed.

Action by S. G. Mayfield against Southern Railway Co. From judgment for plaintiff, defendant appeals.

*Mr. J. F. Carter,* for appellant, cites: *Proof of contents of bill of lading improperly permitted:* 81 S. C., 451. *No evidence of punitive damages:* 29 S. C., 265, 381; 57 S. C.,

325; 52 S. C., 291; 81 S. C., 25. *Action not maintainable under section 1710, Code, 1902:* 53 S. C., 496; 78 S. C., 42.

*Mr. R. C. Holman,* contra, cites: *Failure to give notice required by section 1710 of Code, renders defendant liable: Cave* v. *Ry.,* 53 S. C.

December 2, 1909. The opinion of the Court was delivered by

MR. CHIEF JUSTICE JONES. Plaintiff brought action against defendant to recover damages, actual and punitive, for reasonable detention, reckless handling, unlawful overcharges for feed and freight, and wilful failure to adjust the loss or to give information as to when, where and by what carrier the loss occurred, with respect to a shipment of a carload of horses from Port Thomas, Arizona, to Denmark, South Carolina, in violation of section 1710 of volume I, Code of Laws. The action resulted in a judgment in favor of plaintiff for nine hundred and ninety-five dollars.

It appears that on October 5, 1907, a carload of horses, consisting of thirty-one mares and seven colts, were delivered at Port Thomas, Arizona, to the Gila Valley and Northern Railway, to be shipped to the plaintiff at Denmark, South Carolina, and was handled by connecting lines until delivered to defendant company at Meridian, Miss., on October 26, 1907, having traveled a distance of 1,418 miles. On October 30, 1907, the shipment arrived at Denmark, and was tendered to plaintiff, the distance traveled over defendant's line being 711 miles.

When delivered there were twenty-nine mares and five colts, two horses and two colts short.

Within a week thereafter, three more of the horses and four of the colts died. When received, all the stock were gaunt, weak and poor, and many had their manes and tails eaten off. On November 6, 1907, plaintiff filed with defendant the following claim for adjustment:

| | | |
|---|---|---|
| To  2 horses at $85.00....................$ | 170 | 00 |
| 2 colts at $25.00...................... | 50 | 00 |
| 2 colts died of injuries at $25.00......... | 50 | 00 |
| 1 colt injured by cut on right hind leg..... | 10 | 00 |
| 1 black mare cut on right fore leg........ | 10 | 00 |
| 1 bay mare, left eye knocked out....... | 35 | 00 |
| 12 horses with manes and tails destroyed... | 120 | 00 |
| 29 horses starved, $30.00 each, and detained at Shreveport..................... | 870 | 00 |
| Overcharges in feeding at Shreveport...... | 34 | 90 |
| Overcharges in transportation............ | 80 | 00 |
| Total ...........................$ | 1,429 | 90 |

At the same time plaintiff made demand that defendant inform plaintiff where, when and by what carrier the said freight was lost and damaged.  On April 22, defendant replied that it was unable to state where, when and by what carrier said freight was lost or damaged, except to say that it was not lost or damaged while in the possession of the defendant, and that the shipment was made over the Gila Valley, Globe and Northern Railway, and came into the hands of the defendant at Meridian, Miss.

Defendant offered testimony to the effect that the said car came over the Southern Pacific Railway in connection with the Galveston, Harrisburg and San Antonio Railway to El Paso, Texas, and was there received by the Texas and Pacific Railway Company, on October 8, 1907, in charge of C. H. Hancock; that the car, with consent of Hancock, was billed to plaintiff, Shreveport, Louisiana, and reached that point on October 13, 1907, containing 31 horses and nine colts, and that the condition of the stock showed them to be very weak and thin.  On account of the billing to Shreveport, La., instead of to Denmark, S. C., the car remained at Shreveport until October 24, 1907, when it was forwarded over the V. S. & P. R. R. to Meridian, Miss., a distance of 312 miles from Shreveport.  At Shreveport

one horse died, and it is claimed that thirty horses and nine colts were reloaded at Shreveport, "in fairly good shape," "the rest seemed to have improved there materially." The car was delivered to defendant at Meridian, Miss., on October 26, 1907. Defendant failed to produce any witness that the stock was fed and watered at Meridian, but bill for feeding, $6.00, was claimed by defendant and paid by plaintiff. There was evidence that the stock were fed at Anniston, Ala., on October 27, 1907, and one horse was taken from the car there dead. Charge was made for feeding thirty-two horses and five colts, $17.25, at that point. W. B. Kennedy, a witness for plaintiff, testified that he was in Anniston, Ala., looking for the stock for plaintiff, and found the stock "in good shape." The theory of plaintiff, based upon the condition of the stock on arrival at Denmark, is that the stock was rushed through from Anniston to Denmark without rest, feeding and watering. Defendant offered evidence that the stock was taken from the car at Gainesville, Ga., on October 28th, at 1 P. M., and fed, watered, and rested for eight hours, but that they were in bad condition, gaunt, weak and travel-worn, and would not eat corn. Testimony was offered to show that the stock arrived at Spartanburg, S. C., on October 29, at 3 P. M., and were unloaded and fed, and that there was thirty-seven head; that the car left Spartanburg at 10:50 P. M., October 29, and arrived, as stated, at Denmark on October 30.

It appears that plaintiff purchased in Arizona thirty-one horses with the colts thrown in, at $25.00 per head, that the feed charges were $90.20 and the freight charges were $351.00, that after feeding and attending to the horses for sixty days to put them in condition at an expense of thirty dollars per head, he sold twenty-two head to one person at $72.50 per head, to whom he had contracted to sell at $85 per head, the diminition in price being because of the condition of their manes and tails, and the remainder of the lot that survived were sold on time at from $100 to $150.

From the foregoing recitals of the salient facts it is manifest that verdict for $995 includes punitive as well as actual damages.

After a careful study of the testimony we are unable to discover any testimony whatever reasonably tending to show any wilful or wanton disregard of duty on the part of defendant in the transportation and the care of the stock. The transportation for the distance of 711 miles over defendant's line was made within four or five days, and in that time it is reasonably certain that food and water were provided for the stock at Meridian, Anniston, Gainesville and Spartanburg. There was no evidence of any unreasonable delay in transportation or wanton neglect of the stock en route on defendant's line. It is sought to infer wanton neglect from the mere condition of the stock on arrival at Denmark, and the testimony of Kennedy that the stock was "in good shape" at Anniston, on defendant's line. In other words, reasonable men are asked to believe that the previous transportation over 1,418 miles, and the long delay on that part of the route, had nothing to do with the condition of the stock on their arrival at Denmark. Kennedy's view of the stock in the car at Anniston could not have been otherwise than casual. Such testimony has no unreasonable tendency to so overthrow the positive and undisputed testimony as to the care given to the stock, while in the possession of defendant, as to warrant an inference of wanton neglect. It is perfectly reasonable to suppose that the feeding and watering of the stock, once a day while in defendant's possession could not keep the stock from appearing gaunt, weak and hungry, after such a long journey.

It is true that the delivery in bad condition of stock received in good condition would warrant an inference of negligent handling, unless satisfactorily explained, but that is far from warranting a contrary inference that the condition was the result of a wanton or wilful breach of duty.

There was error, therefore, in submitting to the jury the question of punitive damages.

In accordance with plaintiff's requests, the jury were instructed "that if they believed the plaintiff suffered any damage by reason of loss or damage to said carload of stock, and that the plaintiff filed with the terminal line its account to be paid and adjudged on account of said loss, and gave it notice of such damage, that it would be incumbent on the said defendant to notify the plaintiff within forty days after the receipt of such account and notice, when, where and upon what road or line said damage, injury or delay occurred to the said carload of stock, and the jury is instructed that if the said defendant failed to give information within forty days to the plaintiff, that then the defendant would be held liable for such damage or loss, if any, provided it could not show by due diligence, by a preponderance of the evidence, where such delay, damage or loss occurred to said stock, as provided in section 1710 of the Code of Civil Procedure, Vol. I, 1902."

Appellant's contention is that this and other like instructions, making the provisions of section 1710 applicable to this case, were erroneous and prejudicial, because said section was not applicable. This point is well taken. There is no allegation in the complaint that the shipment was under a contract providing that responsibility of each carrier should cease upon delivery of the freight to a connecting carrier "in good order," and it has been held that no relief can be given under this section unless such a contract is alleged. *Cave* v. *Ry Co.*, 53 S. C., 496, 31 S. E., 359; *Venning* v. *R. R. Co.*, 78 S. C., 55, 58 S. E., 983.

The foregoing conclusions render a new trial necessary, and it is not deemed important to consider the remaining exceptions.

The judgment of the Circuit Court is reversed, and the case remanded for a new trial.